MAYOR AND COUNCIL OF MACON *v.* DANNENBERG.

LITTLE, J.   1. Assuming that the city was liable to respond in damages to the plaintiff because of negligence in permitting a drain or culvert, placed across the street for the purpose of allowing the surface-water to flow from his lot, to become obstructed, the damages which may be recovered are only those

which were occasioned by reason of the fact that the escape of the water was thus prevented.

2. In such a case where damages are claimed for depreciation in the value of the lot, as well as injuries to houses situated thereon, evidence of the cost of repairing and rendering the houses habitable is relevant or admissible only as such evidence is confined to the items of cost necessary to repair or supply defects occasioned by the collection of the water upon the lot.

(a) In such a case the city can not properly be held liable for injuries to the houses and the removal of parts thereof by persons trespassing on the property.

(b) Even if the city be negligent in permitting the mouth of a drain or culvert to be so obstructed as not to carry away the water from the lot, the owner is nevertheless charged with the duty of caring for and protecting ..... property as far as he may be able, and the consequences of his failure to do so will not be chargeable to the city.

3. In a case of the character indicated, the reasonable rental value of the houses on the lot becomes a pertinent and legal subject of inquiry; but evidence by the owner or his agent that he "should" have received a named sum for a given time as rent if the houses had been occupied is not competent proof of such value.

4. Where in such a case damage to houses on the lot is shown as an element of recovery, and it appears that this damage was occasioned, not only by the action of water confined on the lot, but also by natural decay not incident thereto, and by trespassers as well, and the amount of damage sustained by the action of the water alone is not clearly indicated by the evidence, such proof of damage without more does not afford a legal basis for recovery.

*Judgment reversed. All the Justices concurring.*

Argued June 18, — Decided July 23, 1901.

Action for damages.    Before Judge Nottingham.    City court of Macon.    January 31, 1901.

Dannenberg alleged, that in 1894 the mayor and council raised Fifth street in front of his property, three or four feet above the sidewalk, leaving his lot below the grade of the street; that the natural drainage of his lot was across that street; that, after so raising the grade, the mayor and council placed a large sewer there-under, through which the water from his lot and back of it might flow, so as to prevent the accumulation of water on his property; that about December, 1896, the mayor and council permitted the sewer to become filled with sand, etc., so as to render it useless for the purpose of drainage; that he repeatedly complained to the mayor and council of the condition of the sewer and of the conse-quent injury to him, and requested that they open the same, which complaints and requests they disregarded; that, by reason of the elevation of the street and permitting the sewer to be so filled, water flowed upon his lot, and, having no outlet, stood thereon, be-

came stagnant, and rendered his property unsuited to the purpose for which he held it, to wit, renting the houses he had built thereon, and so endangered the health of his tenants that they would not live therein; that the water has frequently risen into the houses, and has stood on the land to a depth of two to three feet, so remaining until it seeped into the ground, leaving the lot muddy and unhealthful; that a number of his houses which, prior to the injuries complained of, produced regular and reasonable rental, have been entirely abandoned because he can not procure tenants to live in them; that by these injuries he has lost in rents, within four years, $1,000; and that he has been further damaged in the same amount by a portion of his lot having thereby been rendered valueless for residence or other purposes. The suit was brought in November, 1899. The defendant denied that the alleged injuries were caused by any negligence on its part; and set up the following: The work of improving Fifth street was done by the board of public works, and was carefully and skillfully done; and the condition of the plaintiff's property is due to causes over which defendant has no control. This property, long before the grading and improvement of the street, had been situated in a low, flat place that overflowed with every rain of any consequence. There was no spring or permanent drain in the property. About the time alleged, by authority or permission of defendant three 18-inch sewer-pipes were placed under and across the street (which was overflowed at all times in high water), for the purpose of draining the surface-water of the lots, and one of these pipes is sufficient to carry off said water. An 18-inch pipe was placed, by plaintiff's authority, under the sidewalk, so as to drain the water from his lot into the three drains first mentioned. Said drains were properly placed and answered all their purposes; but plaintiff's lot by natural accretions filled up until the soil entirely covered the mouth of said pipe and thence went into the pipes under the street and stopped them. Further, the property-owners below the street filled in their property so as to assist the stoppage of the sewer caused by plaintiff's negligence. Had he kept the mouth of his sewer open, and not permitted soil and trash to go into it, the sewer-pipes under the street would now be in good order, and would have drained the lot so far as it could be drained.

After introduction of testimony in support of the contentions

of the parties, the jury found for the plaintiff $725, the verdict being dated January 3, 1901. The defendant excepted to the overruling of a motion for a new trial, which raised, among others, the questions indicated by the headnotes. It appeared from the evidence that the plaintiff had a number of small houses on the lot, aggregating seventeen rooms, nine of which were affected by the overflow or back water. These were always occupied by tenants, at a reasonable rental of fifty cents per week each, before the stoppage of the drain and the standing water; but for four years the plaintiff had received only $38.85 from these nine rooms, as tenants would not stay in them. During that time steps, fencing, etc., had been stolen from the premises, windows had been broken, and other vandalism had occurred. The extent of these injuries did not definitely appear. A contractor estimated that he could put the houses in such condition that they could be rented, but not first-class repair, for $600, and could rebuild the fence for $50 to $100.

*Minter Wimberly*, for plaintiff in error.
*Hardeman, Davis, Turner & Jones*, contra.