## Montgomery, et al. v. Morton, et al.

(Decided May 23, 1911.)

### Appeal from Gallatin Circuit Court.

Wills—Want of Capacity—Evidence—Affirmance of Judgment—Provision of Code—In an action to set aside a will on the ground of mental incapacity and undue influence, the evidence examined and held that it is to the effect that testator was fully competent to make the will and it is to the effect that no undue influence was exercised over him at the time and before the making of the will. Section 134 Civil Code requires this Court to affirm a judgment unless an error prejudicial to the substantial rights of the appellant was committed by the lower court, and there being no error of this character the judgment must be affirmed.

J. C. TOMLIN, JNO. L. VEST and E. E. WINN for appellants.

JNO. S. GAUNT, W. W. DICKERSON and R. B. BROWN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is a controversy over the will of Hugh Montgomery, between the children and descendants of those

who are dead, of his first wife and his second wife and her child by him. The parties first named are contesting the will.

They alleged that at the time it was executed Hugh Montgomery did not have such mental capacity as to enable him to know the natural objects of his bounty, his obligation to them, the character and value of his property, nor how to dispose of it according to a fixed purpose of his own; that one of the contestees, his second wife, exercised undue influence over him to such an extent as to destroy his free agency and constrained him to make the will in contest. These allegations were put in issue by the contestees.

The record shows that Hugh Montgomery was born in 1820; that he married first in 1844 and his wife died in 1890; that there were six children born to that union, four of whom reached their majority. About August 31, 1891, he married Nora Davis and about August 10, 1892, a child was born to this union, and it is one of the contestees in this action. The will in contest was prepared and executed in December, 1892, and Hugh Montgomery died in 1905. The record further shows that previous to the death of his first wife, he executed a will which provided that $15,000.00, less advancements made, should go to each of his children by his first wife and a like sum to one of his grandchildren; that the balance of his estate should go to his wife for life and then to the religious institutions named in the will which are the same as those named in the will in contest. It appears that he did not execute another will until after the birth of his child by his second wife. He went to the bank and secured his first will from the person who had it in charge, took it home with him, made a memorandum of what he wanted his second will to contain, returned the memorandum to his friend at the bank and had him put it in proper form, after which he carried it home with him, copied it in his own hand-writing, signed and returned it to his friend who put it in bank vault where it remained until the day it was probated. This contest was instituted about four years after the will was probated. The last will provides for his first wife's children and his grandchild, as did the first, but provides that the balance of his estate shall go equally to his last wife and his child, Jessie Lee Montgomery, by her, and in case one dies the other is to take as survivor, and in case both die without issue the whole should be divided into four equal parts and distributed

to the Methodist Episcopal Church South at Warsaw, Ky., The Meth. Epis. Church South, at Durry Chapel, Ky., The Widows and Orphans Home of the Methodist Episcopal Church South, at Louisville, Ky., and the Kentucky Conference of the Methodist Episcopal Church South. So it will be seen that the only material difference between the two wills is that in the first appeared the name of his first wife, while in the second appears the name of his second wife and Jessie Lee Montgomery, the child by the second wife.

The record contains over five hundred pages of typewritten testimony. The court gave the usual instructions on the issues named, which are conceded by appellants to be correct with the exception of the claim they make that the court erred in assuming in the first instruction that Hugh Montgomery wrote and signed the will. It is true that the instruction assumes that he wrote and signed the will, but it was not error as all the testimony introduced upon that subject was to the effect that he did write and sign it. There was no issue in the testimony upon that point and it was entirely proper for the court to give the instruction.

Appellants complain of the action of the lower court in refusing to sustain a motion to limit the number of witnesses who testified as to Montgomery's mental capacity, to not more than fifteen, and say it abused its discretion in so doing. (At least thirty testified to that effect.) It is rather unusual for a motion of this kind to be made. Generally the complaint is that the court erred in limiting the number to too few. While the court might have properly limited the number, yet it was in its discretion and we are unwilling to say that it abused it. (Civil Code, Sec. 593.)

They also complain because the court refused to admit evidence by several witnesses which had reference to specific, imprudent or immoral acts of Nora Montgomery, contestee. The court did not err in this. Her acts and conduct, except in so far as they might show that she used undue influence over her husband and induced him to make the will in contest, were not in issue, and it is impossible for us to see how the testimony refused could have elucidated the issues being tried.

They further claim that the court erred in refusing to allow them to introduce an answer which had been sworn to and filed by Nora Morton in the case of Auditor's Agent against her. The purpose of this was to show the value of Hugh Montgomery's estate, which was not an

issue and for that reason the court did not err in refusing to allow appellants to introduce the answer.

Appellants also complain of the argument of appellees' counsel to the jury, because they charged that appellants attacked the widow's character when he knew all the evidence with reference thereto had been excluded from the jury. They admit that no objection or exception was taken at the time of the argument, because, they say, the court had promised in advance to protect appellants by preventing such argument. This court has decided repeatedly that it cannot consider such complaints when no objection was made or exception taken.

Finally, they complain of the misconduct of one of the jurors. They say that the juror stated at the time he was impaneled that he had not expressed or formed an opinion, when in fact, he had as they learned after the trial. There was no evidence introduced to support this contention and we will not discuss it. They also complain because one of the jurors was indebted to one of appellee's counsel, and introduced testimony to show that he was so indebted. This did not disqualify him, but appellants' counsel had a right to know it so that they could, if they desired, excuse him as one of their three peremptory challanges, and the juror should have made the fact of his indebtedness to one of the counsel known when he was examined as to his qualifications. His failure to do so, however, did not render him incompetent. It is claimed in behalf of the juror that he understood the questions had reference to his business relations with them as attorneys.

The testimony was overwhelmingly to the effect that Hugh Montgomery was fully competent in 1892 and up until a short time before his death in 1905, to make a will, and it largely preponderates that no undue influence was exercised over him at the time of and before the making of the will.

Section 134 of the Civil Code, requires this court to affirm a judgment unless an error prejudicial to the substantial rights of the appellant was committed by the lower court, therefore, as we find no error of that character, the judgment is affirmed.