## Glenn, et al v. Crescent Coal Company.

(Decided October 26, 1911.)

### Appeal from Muhlenberg Circuit Court.

Land—Action for Damages for Drain of Copperas Water from Coal Mine—Unused Mine—Notice—Instructions.—In an action seeking damages for the injury to land by the drain of copperas water from a coal mine upon it, and for an injunction to prevent further overflow of water, where the verdict was against plaintiffs and their petition dimissed. Held, that upon the question of damages the evidence was conflicting, and it cannot be said that the verdict was

against the evidence. The jury was advised that unless the defendant operated the old mine, or caused the opening to be in such condition that the water complained of flowed over the land of plaintiff, the defendant was not liable unless it had notice of the overflow and injury to the land; that it was the duty of plaintiffs after receiving notice that their land was being injured by the overflow of copperas water to exercise reasonable care to protect themselves from further injury, and if they failed they could not recover, and that the verdict should be for defendant if the jury believed plaintiffs had failed to make reasonable efforts to prevent · natural waterways across their lands from becoming obstructed and filled so as to cause the overflow. Instructions embodying these views of the law were correct.

ROBERT HARDISON for appellants.

BELCHER & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In this litigation the appellants, W. E. Glenn and others, the owners of a small tract of land in Muhlenberg County, Kentucky, sought to recover damages of the Crescent Coal Company for suffering and permitting copperas water to flow from its mines over their property. They alleged that some of this copperas water was suffered and permitted to flow from an unused mine owned by appellee, while still other water was pumped from one of its mines, and that this water, flowing from the unused mine and pumped from the mine in use, ran down upon their land and destroyed the vegetation thereon, damaging it in the sum of $800.00.

The defendant in its answer denied that it had damaged the plaintiffs in any sum whatever. It further pleaded that the unused mine had not been worked for many years, that they had only recently come in possession of the property, i. e., within the last few years, and that they were not aware that any copperas water flowed therefrom or had flowed therefrom over on plaintiff's land. They admitted pumping copperas water from the other mine, but alleged that it flowed down the natural waterway through plaintiff's land, and that if any damage was done by said copperas water it was due to the fact that the plaintiffs had caused the waterway to become closed by the accumulation of dead timber or other waste material from their farm, thus diverting the water

from its channel and causing it at times to flow upon plaintiff's land.

The affirmative matter in the answer was traversed, and upon a trial of the issues thus formed a verdict was returned in favor of the defendant. The suit was in equity and an injunction was sought prohibiting the defendant company from permitting the copperas water to flow from its unused mine and also prohibiting it from pumping copperas water from its other mine so that it could flow over plaintiff's land. The jury having found against plaintiffs, the Chancellor dismissed their petition, and from that judgment this appeal is prosecuted.

A reversal is sought principally upon the ground that the court did not properly instruct the jury. Upon the question of damage the evidence was conflicting, and it cannot be said that the verdict of the jury is against the weight of the evidence; and unless the court erred in instructing the jury, its finding of fact must be affirmed. The instructions to which appellants object are Nos. 6, 7, and 8. In instruction No. 6 the court in substance told the jury that unless the defendant operated the old mine or caused the opening thereof to be in such condition that the copperas water flowed therefrom upon the over plaintiffs land, defendants were not liable for any damage resulting therefrom, unless they had notice that said water was flowing from said opening upon their land and injuring it. This old mine had been opened some thirty years before the trial, and such copperas water as escaped therefrom flowed down a natural waterway, which was a small ditch or branch through the lands owned by appellants. The pumping station from which the water was pumped out was established some twenty years or more before the litigation, and the water as pumped from it had likewise flowed down the natural waterway through appellant's land. The property was in this identical condition when bought by appellee company. They at no time worked the old mine or did anything to it or with it, and made no change of any sort in its opening or mouth from which the water flowed. After their purchase they did continue to pump water from the pumping station, until some time in the year 1905. During all of this time no complaint was made to them by anyone owning this land of any damage whatever from any source until three or four years after the pumping

station had been abandoned and no water had been thrown by appellee into this natural waterway. The proof shows that copperas water from other openings passed through ditches and natural waterways over the lands of other persons until it reached the stream flowing over appellant's land. All of the evidence shows that no damage resulted to appellants from the copperas water after it reached the stream, although there is some evidence supporting appellants' claim that during periods of heavy rainfalls the waterway or ditch was not sufficient to carry the flow and that its banks overflowed, and that the water ran into a field near and below the ditch or waterway, and it is this land which appellants claim was damaged. It is not shown that there was any deposit of copperas on this land, or that mineral water was standing on any of the land; although there is testimony that some of the lower portions of this land produced no vegetation. The ground upon which appellants rest their right to recover is that appellee was maintaining a nuisance. If so, before appellants would have any just cause of complaint they should have brought notice of this fact home to appellee and given it an opportunity to evade it or correct the evil. When appellee purchased this property the old mine was there in the same condition that it had been for many years, and as no complaint, so far as the evidence shows, had been made that the water discharged therefrom was injuring the property of anyone, and particularly appellants, it would be manifestly unjust to hold that appellee was liable for damage resulting from this flow of water in the absence of some notice to it that injury or damage was being caused thereby.

In the case of West & Bro. v. L. C. & L. R. R. R. Co., 8 Bush, 444, this court had under consideration the right of a distillery company to recover damages from a railroad company for injury to its property resulting from the flooding of the distillery on account of an obstruction which the railroad company had put in a stream running near by. The bed of the road was built in 1833. When built culverts were placed thereunder, and it appears that these culverts were never sufficient for the free and natural passage of the water in rainy seasons, and at different times it had caused the water to accumulate above it and overflow the adjacent lands. Some years after the construction of the railroad the distillery property was

bought by West & Bro., and the flooding thereof occurred after its purchase. After stating the facts, the court said:

"With reference to the imputed liability of the appellee for continuing in 1870 a private nuisance created as early as 1833, it must be borne in mind that the parties are in the position of grantees since the erection of the nuisance. But although when one who erects a nuisance conveys the land he does not transfer the liability for the erection to the grantee, it is nevertheless true that an alienee may become responsible for the continuance of a nuisance, either to a party originally affected by it or another deriving title from him. We consider the principle, however, as sustained, at least by a preponderance of authority, that in such a case the alienee or grantee does not become responsible, unless after reasonable notice, request, or remonstrance he shall refuse to reform or abate the nuisance."

And continuing, the court cited with approval the following from Johnson v. Lewis, 13 Conn., 303:

"The purchaser of property might be subjected to great injustice if he were made responsible for consequences of which he was ignorant, and for damages which he never intended to occasion. They are often such as can not be easily known except to the party injured. A plaintiff ought not to rest in silence, and finally surprise an unsuspecting purchaser by an action for damages, but should be presumed to acquiesce until he requests a removal of the nuisance."

We are of opinion that, under these authorities, instruction No. 6 was authorized; and we are further of opinion that in the form in which it was given it was even more favorable to appellants than they were entitled to have it.

Complaint is likewise made of instructions No. 7 and 8. In instruction No. 7 the court told the jury that it was the duty of plaintiffs, after receiving notice that their land was being injured by copperas water from defendant's pumping station or mine, to exercise reasonable care to protect themselves from further injury, and if they failed to do so they cannot now recover for any injury which, by the exercise of reasonable care, they might have avoided. This instruction was given because it was made to appear in the evidence that the plaintiffs had deadened a lot of trees and timber along the banks

of the waterway, and had suffered and permitted this deadened timber to fall into and obstruct the free flow of the stream, causing the water to flow over their land.

In instruction No. 8 the court told the jury that if they believed from the evidence that the plaintiffs had failed to make a reasonable effort to prevent the natural waterways across their lands through which copperas water from defendant's mine was flowing from becoming obstructed and filled up, and thereby said water was caused to flow upon their land and injure it, they should find for the defendant as to such injury.

These instructions, while not strictly accurate in defining the rights of the respective parties, were evidently not prejudicial to appellants, for it is clear from the evidence that they knew that these deadened trees were falling into and across the water way, and that the debris and trash which the heavy rains brought down from the uplands would lodge against these timbers and cause the stream to overflow. It seems this is what plaintiff desired should be done. Their lands at that point were low and swampy. They knew that much silt and detritus was brought down from the higher lands above them and that if the water carrying this was caused to overflow their land this silt and soil would be deposited thereon and the land would be rendered more valuable. This is doubtless true; but they knew, or must have known, that the copperas water from these mines above then flowed down this natural waterway, and that if the water was diverted from its channel and caused to flow over their land the copperas water would to some extent be deposited thereon. If they desired that their low lands should be built up by deposits brought down by the stream from above, and with a view to this end they suffered and permitted the bed of the stream to become closed so that the water flowed over their land, they must take it as they find it, the burden with the benefits. It is well settled that the owner of land through which a stream flows may make any reasonable use he desires of the stream so long as such use does not interfere with the rights of others. It was perfectly right for plaintiffs to cause the water from this stream to flow over their land, provided they again caused it to enter its channel before leaving their property. But they could not, after causing the water to leave the banks of the stream and flow over their land, hold appellee responsible for their resulting

damage. This would be an improper use of the water on their part.

It is the enunciation of no new principle to state that it is the duty of one whose property is injured, or about to be injured, by the wrong of another, to exercise reasonable diligence to avoid or minimize the resulting injury. If he fails to do so he cannot recover for any damage which he could, by the exercise of reasonable care, have avoided. This principle is admirably stated by Mr. Thompson in his work on Negligence, Vol. 1, page 195, where, after discussing various phases of this subject, he says:

"In short, the law imposes upon every person who has been injured, either in his person or property, by the negligence or misconduct of another, to do what he reasonably may in order to keep down the damages or to prevent their enhancement. But this obligation is not absolute; it is relative; it extends no further than to require him to do what a reasonable man, guided by considerations of obligations which rest upon every member of a civilized society, might be expected to do under the circumstances."

This is, in substance, what the court told the jury it was the duty of plaintiffs to do in regard to this waterway.

In Raleigh v. Clark, 114 Ky., 732, it was held, that where one whose duty it was to clean out a ditch failed to do so, by reason of which another's land was overflowed and his crop damaged, he could only recover the reasonable cost of opening the ditch and keeping it open.

And in Chicago & Eastern R. R. Co. v. Chestnut Bros., 28 Rep., 404, the plaintiff sought to recover damages from the railroad company for failure to deliver to them a car load of fowls with reasonable dispatch, by reason of which delay a number of the fowls were frozen and damaged. It appeared in the evidence that, although there was delay in forwarding the car to its destination in Chicago, the consignees, the agents of plaintiff, failed to unload the fowls therefrom promptly upon its arrival, and because of such failure an additional loss was sustained. In passing upon the rights of the respective parties, the court said:

"From these facts it must be seen that appellants were not liable at all for fowls which died because of diseased condition when shipped; nor for those which

died from exposure or other cause before they reached Chicago; nor for any that died or were damaged by reason of any negligence of Brown & Son in failing to remove them from the car after having had it so placed that they reasonably could have removed them before damage or death to them.''.

It will be observed that the court here held that there could be no recovery for any damage which might have been prevented by the exercise of reasonable care upon the part of the plaintiff's agent in unloading the fowls. So, in the case at bar, appellants could have avoided any injury whatever to their land by keeping the waterway or ditch through it free from the falling timber which obstructed the stream and caused the water to overflow their land.

In Cain v. L. & N. R. R. Co., 27 Rep., 201, it was held that a passenger put off a train at a wrong station was not entitled to recover for damages which she could reasonably have avoided, or to enhance her damages by her own imprudent conduct. In other words, she should exercise reasonable care not to enhance or increase her damage.

In New York Life Ins. Co. v. Pope, 24 Rep., 485, it was held that one holding a policy of insurance which entitled him to borrow money thereon from the insurance company at a specified rate was not entitled to recover damages from the company because of its failure to loan him money thereon in the absence of a showing that he was unable to borrow money elsewhere at as favorable a rate.

In L. & N. R. R. Co. v. Sullivan Timber Co., 138 Ala., 379, it was held that where the property of the appellee was set fire to by sparks from an engine of the appellant company, it was the duty of appellee to exercise reasonable care to extinguish the fire and prevent its spread, and that they were only entitled to recover for such damage as they could not have avoided by the exercise of reasonable care.

In Ft. Smith Suburban Railway Co. v. Maledon, 78 Ark., 366, it was held that where one had wrongfully entered another's land and left his fences down so that cattle entered the premises and destroyed the crops, a recovery could be had only for such damages as the owner of the crops could not have avoided by the exercise of reasonable care.

In City of Macon v. Dannenberg, 113 Ga., 1111, it was held that where a city had negligently permitted a drain to be so obstructed as not to carry away the water from a lot, the owner of this lot must exercise reasonable care to prevent his lot from being injured by an overflow, and that he could not recover from the city for any damages which he might have, by the exercise of ordinary care in this particular, avoided.

To the same effect are Hartford Deposit Co. v. Calkins, 186 Ill., 104, and Scherrer v. Baltzer, 84 Ill. App., 126.

In Harrison v. Mo. Pac. Ry. Co., 88 Mo., 625, it is held to be the duty of a person whose property has been injured by the negligence of another to put forth reasonable exertion and expense to prevent their injury, and if he fails to do so he cannot recover as for a total loss.

Clearly upon principle and in the exercise of common justice it was the duty of appellants, when they knew their land was being injured by the flow of copperas water over it, to exercise reasonable care to prevent this injury by the removal of the fallen trees from the waterway. Had this been done they would have suffered practically no damage at all. The jury evidently regarded this failure on their part as the proximate cause of any damage which they had sustained.

The substance of the instruction asked for by appellants and refused was embodied in the instruction on the measure of damages given by the court.

Lastly, it is urged for appellants, that the chancellor should have, notwithstanding the verdict of the jury, enjoined the appellee company from permitting the copperas water to flow from its mine down upon their land. Clearly he should not have done so unless he believed from the evidence before him that the appellants were damaged thereby. While it is true that the verdict of the jury need not exercise a controlling influence over the mind of the chancellor in determining the rights of the parties, it is entirely proper that it should have been given some weight and consideration by him. We are of opinion, after having read the record with great care, that he gave this verdict of the jury no more weight than it was entitled to. Plaintiffs' damage, if any, was not caused by the running of this copperas water into the natural waterway that flowed through their place. So long as the waterway remained open they suffered no

damage to their land, but it was only when they permitted it to become closed or stopped up that any damage resulted to them. If the timber which they deadened along the banks of this waterway fell into it and was permitted by them to remain in it and thus cause the stream to overflow, plaintiffs might not rightfully complain of any resulting damage. This is not a suit for damages arising from a pollution of the stream, but for injury to land caused by the overflow of the stream, and the jury having found that plaintiffs have not sustained any damage on this account, the chancellor did not err in refusing the injunction.

Judgment affirmed.