## Eaton v. Green River Coal & Coke Company.

(Decided January 28, 1914.)

### Appeal from McLean Circuit Court.

1. Trial—Pleading—Answer.—A defendant will not be allowed to file an answer traversing the allegations of the petition, and subsequently require those allegations to be made more specific, since by answering he treated the allegations of the petition as sufficiently specific for the purposes of his defense.

2. Trial—Discretion of Trial Court in Limiting Number of Witnesses and Depositions.—Ordinarily, the trial court has the right, in its discretion, to limit the number of witnesses, and the number of depositions to be read to prove a particular fact; and this rule has been applied when the fact is collateral to the main issue, or the testimony is for the purpose of impeaching a witness, or is expert or opinion evidence.

3. Trial—Avowal—Review.—Where the record shows that the plaintiff offered to introduce "other witnesses" who would testify, in substance, as three witnesses had theretofore testified, and the court refused to hear further testimony from the plaintiff, there was a sufficient avowal upon the part of the plaintiff to present the action of the trial court for review.

4. Trial—Section 904, Kentucky Statutes—Witnesses.—While Section 904 of the Kentucky Statutes authorizes the court to con-

fine the number of witnesses to not exceeding two, to any point for the purpose of making allowances to witnesses, it in no way affects the rights of parties to introduce a larger number of witnesses at their own expense.

5. Trial—Facts—Relevancy.—Facts which, though not in issue, are so connected with the fact in issue as to form part of the same transaction, or subject matter, are deemed to be relevant to the fact with which they are so connected.

6. Damages—Duty the Law Imposes Upon Injured Person.—The law imposes upon every person who has been injured, either in his person or property, by the negligence or misconduct of another, to do what he reasonably may in order to keep down the damages, or to prevent their enhancement..

7. Damages—Obligation of One Injured to Keep Down Damages.— The obligation of one injured by the negligence of another, to keep down the damages, is not absolute; it is relative; it extends no further than to require him to do what a reasonable man, guided by a consideration of obligations which rest upon every member of a civilized society, might be expected to do under the circumstances.

R. P. ROWE, JOE H. MILLER and W. A. TAYLOR for appellants.

WILLIAM B. NOE and LITTLE & SLACK, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellants own a farm of 115 acres near Island, in McLean County. About 60 acres of the farm is fertile, high bottom land through which a creek flows from east to west. Appellee owns a coal mine located on said creek east of appellants' land, and very near it. Appellee has operated this coal mine for the past eight or ten years. The Louisville & Nashville railroad track runs across the eastern end of appellants' farm, and under this track there is a culvert or opening for the creek to pass through.

In August, 1912, appellants brought this action for damages alleged to have been caused to their land by reason of the appellee having negligently thrown the slack, copperas and copperas water from its mine into the creek, thereby causing about 17 acres of appellants' land lying east of the railroad track to be covered with said slack, copperas and copperas water, and destroying its fertility. The answer controverted the petition, and affirmatively pleaded that plaintiffs had caused and suffered the creek to be obstructed so as to cause the overflow and consequent damage, which latter allegation was controverted by a reply.

A trial having resulted in a verdict for the defendant, the plaintiffs appeal.

Appellants assign four grounds for a reversal, which we will consider in their order.

1.   The petition alleges that the damage was caused by the defendant having negligently thrown from its mine, slack, copperas, "and other deleterious substances," into the creek.

Upon motion of appellee, appellants were required to make this allegation more definite and certain, by specifying what substances were meant by "other deleterious substances"; and plaintiffs having failed to comply with the order, those words were stricken from the petition.

Appellants insist that this was error, and that the specification of mine slack and copperas, followed by the allegation of "other deleterious substances," was a sufficient description and notice to the defendant of the nature of plaintiffs' action.

As a question of practice, we are of opinion the phrase "other deleterious substances" was not sufficiently specific to satisfy the rules of good pleading, and that ordinarily the court's action requiring the allegation to be more specific, would have been correct. In this case, however, the infirmity of the petition was waived by the filing of the answer controverting that allegation, on September 2, 1912. The motion to make the petition more specific was not made until October 7, 1912. A defendant will not be allowed to file an answer traversing the allegations of a petition, and subsequently enter a motion to require those allegations to be made more specific, definite and certain. By answering, he treated them as sufficiently definite for the purposes of the defense. The trial court erred in disregarding the waiver.

2.   After the appellants had introduced three witnesses upon the subject of the damage, and one expert, a druggist, who testified that water and slack taken from the mine contained ten per cent of sulphuric acid, "the plaintiffs offered to introduce other witnesses here who would testify, in substance, as the three foregoing witnesses; and the court having intimated that only three witnesses would be allowed to testify on one point, refused to hear further testimony of the plaintiffs, to which ruling of the court the plaintiffs excepted." Thereupon the appellants of necessity, rested their evidence. Likewise, the defendant introduced three witnesses upon the

subject of the damage, and a fourth upon an immaterial point. Appellants insist that the ruling of the court in limiting the number of their witnesses to three, was error. They insist that they had a score of witnesses present by which they could have proved their damage, and that it had not been caused by their fault or negligence; and that in restricting them to three witnesses, who were squarely contradicted by three witnesses of the appellee, they have been prejudiced. Appellee insists, however, that appellants made no avowal as to who the witnesses were, or what plaintiffs could prove by them, and that in the absence of a sufficient avowal, this ruling of the court cannot he reviewed.

We think, however, the ruling of the court that it would not admit any further evidence upon the subject of damages, was sufficiently broad to render a more specific avowal unnecessary; the general avowal upon the part of the appellants that they had other witnesses by whom they could prove their damage, was sufficient. The rule of practice restricting the number of witnesses is laid down as follows, in 38 Cyc., 1345:

"Ordinarily, the court has the right, in its discretion, to limit the number of witnesses, and the number of depositions to be read, to prove a particular fact. The rule has been applied when the fact is collateral to the main issue, or the testimony is for the purpose of impeaching a witness, or is expert or opinion evidence. There are, however, cases holding that the court cannot limit the number of witnesses to a controlling and controverted fact, especially during the time that witnesses are being examined. But the court may even as to such facts limit the right of a party to call witnesses to the extent of ordering that additional witnesses shall be called only at the cost of the party calling them."

This rule has, in a measure, been incorporated in section 593 of the Civil Code of Practice, which reads as follows:

"The court shall exercise a reasonable control over the mode of interrogation, so as to make it rapid, distinct, as little annoying to the witness and as effective for the extraction of the truth as may be; but, subject to this control, the parties may put such legal and pertinent questions as they may see fit. The court, however, may stop the production of further evidence on a par-

ticular point, if the evidence upon it be already so full as to preclude reasonable doubt.''

Under this provision the trial court is given a discretion, after hearing evidence that is so full upon a particular point as to preclude a reasonable doubt of the fact, to stop the production of further evidence upon that point. In applying the rule it is usual for the court, after having heard testimony upon a given point, to announce it will thereafter permit only a limited number of additional witnesses upon that point. This practice gives the party the opportunity of selecting his best witnesses, and thereby presenting his case in its strongest light. And, under section 593, *supra,* the court may, when the facts justify it, stop the production of further evidence upon a particular point without the preliminary announcement. But to peremptorily stop the evidence upon the chief point in the case after only three witnesses had testified was an abuse of discretion.

While section 904 of the Kentucky Statutes authorizes the court to confine the number of witnesses to not exceeding two on any one point for the purpose of making allowances to witnesses, it in no way affects the right of parties to introduce a larger number, at their own expense, under section 593 of the Code, *supra.*

In Kash v. Miller, 2 Bush, 569, this court reversed the trial court because it had restricted the plaintiff to three witnesses on the question of the identity of a horse, saying:

''On the question of identity in this action of replevin for a horse, the circuit court restricted the plaintiff, now appellant, to three witnesses, and would not permit him to examine more, though he offered to do so.

''The legal restriction of the taxation of costs to three witnesses to the *same fact* does not imply that a party shall examine only three, if he chooses to do so at his own cost.''

In McPhillips v. Livezey, 11 Ky. L. R., 899, the plaintiff sued for damages to his house, and after three of his witnesses had testified, the court, as in the case at bar, refused to permit further testimony upon that point. In reversing the judgment, the Superior Court, speaking through Judge Barbour, said:

''The plaintiff, in proper course of the trial, offered to prove by three other witnesses, who were in the house at the time, substantially the same facts testified to by the three witnesses who did testify, but upon the defend-

ants objection the court refused to allow these witnesses to testify. This was error. (Kash v. Miller, 2 Bush, 568)."

The rulings in the two cases above cited were expressly approved in City of Covington v. Taffee, 24 Ky. L. R., 374; 68 S. W., 629. See, also, Burt & Brabb Lumber Co. v. Crawford, 27 Ky. L. R., 799; 86 S. W., 702.

The effect of the ruling of the court was to set off three witnesses on the one side, against three witnesses on the other side, each side contradicting the other. While appellants had as they claim, a score of witnesses to prove their damages, and some of them perhaps better witnesses than the three who had testified, it may have been true that appellee had only three witnesses, all told, upon that subject.

Under the circumstances of this case the court erred in restricting plaintiff to three witnesses.

3. The witness, Rowe, testified that the first damage he had noticed from the water and slack from the mine, was to a tract of about 40 or 50 acres which lies west of and below Eaton, where the timber had been killed; and it seemed to the witness that the creek had been filled up by the refuse from appellee's mine. The court excluded this testimony, and appellants insist this was error.

As both tracts of land were situated upon the same creek and near each other, the fact that the creek had been filled on the lower tract, which had thereby been overflowed, was a fact, if true; tending to sustain Eaton's contention that his land had likewise been affected in the same way, by the same creek. Under the rule that facts which, though not in issue, are so connected with a fact in issue as to form part of the same transaction or subject-matter, are deemed to be relevant to the fact with which they are so connected, Rowe's testimony was competent. Stephen's Ev., Art. 3.

4. Complaint is made of the second instruction, which reads as follows:

"The court instructs the jury that after having knowledge that the land mentioned in the evidence was being injured, if it was injured as claimed by the plaintiff, then it was plaintiff's duty to exercise reasonable care to protect themselves from further injury, and if you believe from the evidence they failed to do so, or failed to make reasonable effort to prevent the water way across said land from being obstructed and thereby

the water from defendant's mine was caused to overflow and injure said land, you should find a verdict in favor of the defendant.''

Appellants insist that the first clause of this instruction required them, in effect, to ditch their land in order to protect it against appellee's negligent acts. Under the pleadings, however, which squarely made the issue of appellants' negligence in permitting the water way to become obstructed by cross-fences, it was proper to submit that issue to the jury.

In Glenn v. Crescent Coal Co., 145 Ky., 145, a case substantially on all-fours with the case at bar, we said:

''Clearly upon principle and in the exercise of common justice it was the duty of appellants, when they knew their land was being injured by the flow of copperas water over it, to exercise reasonable care to prevent this injury by the removal of the fallen trees from the waterway. Had this been done they would have suffered practically no damage at all. The jury evidently regarded this failure on their part as the proximate cause of any damage which they had sustained.''

In that case the plaintiffs knew the waterway was obstructed with some dead trees that had fallen into it, thereby causing it to overflow; in the case at bar the appellants had erected two fences across the ditch, and another at its lower end, the fences resting upon the bottom of the ditch in each case. These fences may have caused the overflow, and the question was properly presented to the jury.

While instruction No. 2 given in this case and quoted above, follows, largely, instruction 7 given and approved in the Glenn case, it fails in its last clause, to tell the jury that appellants cannot recover for any injury which, by the exercise of reasonable care, they might have avoided, as was done in the Glenn case. This should have been done.

The opinion in the Glenn case quoted with approval the following text from 1 Thompson on Negligence, 195:

''In short, the law imposes upon every person who has been injured, either in his person or property, by the negligence or misconduct of another, to do what he reasonably may in order to keep down the damages or to prevent their enhancement. But this obligation is not absolute; it is relative; it extends no further than to require him to do what a reasonabe man, guided by a con-

sideration of obligations which rest upon every member of a civilized society, might be expected to do under the circumstances."

Judgment reversed and action remanded for a new trial.