## North Jellico Coal Company v. Trosper.

(Decided June 15, 1915.)

### Appeal from Knox Circuit Court.

1. Trial—Limiting the Number of Witnesses.—The trial court abused its discretion in limiting the number of witnesses where the result of such ruling was to permit defendant only five witnesses testifying concerning a controlling fact upon which plaintiff had introduced six.

2. Damages—Injury to Land by Mine Debris Cast in Stream—Measure of Damages.—An instruction fixing the measure of damages for injury to land as the difference between the value of the land in its present condition and the value thereof in "its natural condition" is erroneous.

3. Limitation of Actions—Injuries to Land.—Where land is injured by the filling up of the channel of a creek by mine debris, the statute of limitations begins to run upon the actual happening of the damage, regardless of when the debris was placed in the stream.

4. Negligence—Failure to Exhibit Degree to Which Act of One Tort Feasor Contributed to Injury Will Not Defeat Recovery.— In an action to recover damages for injuries to land by mine slack cast in a stream, where the evidence shows that there were several mines from which slack could have come, the fact that the plaintiff cannot establish that the injury was due solely to slack which came from defendant's mine will not defeat a recovery.

BLACK, BLACK & OWENS for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

L. P. Trosper is the owner of a small tract of land on Lynn Camp Creek in Knox County. The North Jellico Coal Company operates a coal-mining plant on Screw Auger Branch, a tributary of Lynn Camp Creek. The branch empties into the creek a couple of miles above Trosper's farm.

Alleging that the coal company had negligently placed deposits of slack and fine coal on the banks of Screw Auger Branch, and that the same had been carried down the creek and filled up the channel thereof, causing the lands owned by him to be overflowed, washed away and rendered unproductive, Trosper instituted this action in the Knox Circuit Court against the coal company to recover damages therefor. The plaintiff having on January 28, 1914, obtained a verdict and judgment in the sum of two hundred dollars, defendant coal company appeals.

1. Its first complaint is that the trial court erred in limiting the number of witnesses.

The bill of exceptions shows that plaintiff introduced seven witnesses and that defendant then introduced a like number, the seventh witness being George Ohler. Plaintiff then introduced witnesses in rebuttal and defendant a witness in surrebuttal. Then follows this recitation:

"Just after the defendant closed the evidence of the witness George Ohler, the court announced that the defendant company could not introduce any other wit-

nesses; and to that ruling of the court the defendant at the time objected and excepted, and avows that defendant wishes to introduce as witnesses in its behalf J. S. Lovell, Stephen Johnson, Elijah Harris, Will Harris, Dan Hodges, Will S. Sevier, Henry Smith, James Helton, Josh Davis, Tillman Gray, George Barton, Harrison Steele, and E. S. Williams, all of whom were present, and had been sworn as witnesses and placed under the rule, but the court would not permit either of them to be introduced by defendant, and to that ruling of the court the defendant at the time objected, and avows that defendant could truthfully prove by said witnesses, if they were to be permitted to testify, that they were familiar with Lynn Camp and mines of the defendant company, and had been for years, and the premises and land of the plaintiff; that said land had been for long years subject to overflows when rains would come, and that was true before defendant ever started its mines on said creek; that there was no slack in the creek in plaintiff's land, and no washing of any of said ground by the overflowing of the water; that the creek through plaintiff's land was partially filled and dammed up with logs and drifts and weeds and which had the effect of holding back the water and causing it to overflow plaintiff's lands; and defendant could prove by said witnesses that the defendant company had not for the last fifteen years permitted any of its slack from its mines to be wasted, but had sold the same to the markets of the country and had it carried away in railroad cars.''

The record does not disclose when the court first announced this limitation of the number of witnesses. Appellee strenuously insists that before the introduction of any testimony, the court limited the plaintiff to seven witnesses and announced that the defendant would be likewise limited; while the appellant points to the foregoing excerpt from the record insisting that the record shows that not until after it had introduced its seventh witness did the trial court intimate its intention to limit defendant in respect to the number of witnesses.

But, in view of the conclusions we have reached with reference to the action of the trial court in limiting the number of witnesses to be introduced by defendant, it is immaterial when the limitation was first announced.

The only provision of the Code in respect of limiting the number of witnesses is Section 593, which is as follows:

"The court shall exercise a reasonable control over the mode of interrogation, so as to make it rapid, distinct, as little annoying to the witness and as effective for the extraction of the truth as may be; but, subject to this control, the parties may put such legal and pertinent questions as they may see fit. The court, however, may stop the production of further evidence on a particular point, if the evidence upon it be already so full as to preclude reasonable doubt."

In connection with this section of the Code, there is also Section 904, Kentucky Statutes, which authorizes the court to limit the allowance of witness fees taxed as costs, to two witnesses on any one point.

This section of the Code, and a similar provision of the statutes, were in effect when Kash v. Miller, 2 Bush, 568, was decided. In that case, which was an action of replevin for a horse, there was an issue as to the identity of the horse involved, and the trial court restricted the plaintiff to three witnesses on the general fact of identity. This court, in reversing the judgment, said: "The legal restriction of the taxation of costs to three witnesses to the same fact, does not imply that a party shall examine only three if he choose to do so at his own cost. On such a question of identity, which may be established by various circumstances—one witness testifying to one mark or sign and other witnesses to others—more than three witnesses might become not only useful, but necessary to establish the truth. Besides the general fact of identity may depend on many incidental and subsidiary facts; and if, in the exercise of a sound discretion, the court might refuse to hear more than three witnesses to the same fact, that should be one of the subsidiary facts—as in this case, for example, a peculiar mark on the horse's nose, or its age, which were only two of several distinct facts conducing to prove the litigated fact of identity." This case was followed in McPhillips v. Livezey, 11 R., 898, and in City of Covington v. Taffee, 68 S. W., 629, 24 R., 373, in both of which it was held error to limit to three the number of witnesses on controlling facts.

Eaton v. Green River Coal & Coke Company, 157 Ky., 159, 162 S. W., 807, was an action to recover dam-

ages for injury to the plaintiff's land by mine debris cast into a stream; and after plaintiff had introduced three witnesses on the subject of the damage to his land, the trial court refused to permit further evidence on that issue. In reversing the judgment for this error, this court said:

"While Section 904 of the Kentucky Statutes authorizes the court to confine the number of witnesses to not exceeding two on any one point for the purpose of making allowances to witnesses, it in no way affects the right of parties to introduce a larger number, at their own expense, under Section 593 of the Code, *supra.* * * * The rule of practice restricting the number of witnesses is laid down as follows, in 38 Cyc., 1345: 'Ordinarily the court has a right, in its discretion, to limit the number of witnesses, and the number of depositions to be read, to prove a particular fact. The rule has been applied when the fact is collateral to the main issue or the testimony is for the purpose of impeaching a witness, or is expert or opinion evidence. There are, however, cases holding that the court cannot limit the number of witnesses to a controlling and controverted fact, especially during the time that the witnesses are being examined. But the court may, even as to such facts, limit the right of a party to call witnesses, to the extent of ordering that additional witnesses shall be called only at the cost of the party calling them.' This rule has in a measure been incorporated in Section 593 of the Civil Code of Practice. * * * Under this provision the court is given a discretion after hearing evidence that is so full upon a particular point as to preclude a reasonable doubt of the fact, to stop the production of further evidence upon that point. In applying this rule it is usual for the court, after having heard testimony upon a given point, to announce that it will thereafter permit only a limited number of witnesses on that point. This practice gives the party the opportunity of selecting his best witnesses and of thereby presenting his case in its strongest light. And, under Section 593, *supra,* the court may, when the facts justify it, stop the production of further evidence upon a particular point without the preliminary announcement."

In the case at bar, appellee charged that slack and fine coal had filled up the channel of the creek at a point some distance above his land and had caused a new chan-

nel to be formed, as the result of which his land was greatly injured by overflow, by washing away and by being rendered unproductive.

It was appellant's contention that fallen timber and other debris of that character had caused the formation of the new channel rather than slack and fine coal; and, further, that even if caused by fine coal, such coal did not come from its mines, but from the mines of others; and, further, that if the land was injured at all, the injury was very slight.

In presenting this defense, as well as its ideas as to the extent and nature of the injury to appellee's land, it is easily apparent that appellant had grounds for the use of a number of witnesses. The condition of the creek for a number of miles above appellee's land; the condition of the coal deposits at other mines on the waters of Lynn Camp Creek; the history of the several coal operations which had been conducted by other companies thereon, as well as itself, during a number of years prior to the institution of this action, in respect of the disposition made by them of their slack; the extent to which brush and fallen timber had contributed to the blocking up of the original channel of the creek; and the actual character and extent of the injury to appellee's land, were all necessary to be shown by appellant in the presentation of its defense, and these are all directly involved in a consideration of the negligence charged and of the nature and extent of the consequences resulting therefrom.

Should it be conceded that a trial court has the right to limit the introduction of witnesses so as to make the parties equal in this respect (about which we express no opinion as the question is not before us), yet, in the present case, while the witnesses were equal in number, they were not equal in value as to issues.

For instance, six out of the seven witnesses introduced by plaintiff testified as to the condition of plaintiff's land, while but five of the seven witnesses introduced by defendant could testify concerning this point. Appellant's superintendent, who was seemingly indispensable on the question of the condition of its mines and the disposition made by it of its slack coal, could not testify relative to the injury to plaintiff's land, and another of appellant's witnesses, who was introduced on the question of the disposition of the slack at another

mine on Lynn Camp Creek, was unable to testify con-
cerning the injury to or condition of plaintiff's land.

In view of these facts, we are convinced that in limit-
ing the number of witnesses to be introduced by de-
fendant, the trial court erred to the prejudice of its
substantial rights, for which reason a new trial will be
granted.

2. It is further contended by appellant that the trial
court erred in denying its motion for a directed ver-
dict; but, in view of the fact that there must be another
trial, we will not discuss this contention further than to
say that appellant rests its claim in this respect upon the
assertion that there was no evidence showing that the
slack which filled up the original channel of the creek came
from its mines. It was shown in evidence that there are,
or had been, several other coal mines operated on Lynn
Camp Creek and its tributaries above appellee's land,
some of which were below appellant's mines and nearer
to appellee's land; and because of this appellant ar-
gues that the slack from the nearer mines must have
reached the point in the creek where the channel was
obstructed before any slack from its mines could have
done so, and that, therefore, it was slack from these
nearer mines, rather than slack from its own, which
caused the injury to appellee's land.

However, there was evidence that appellant company
had dumped slack directly in the branch, and there was
evidence that the lower mines did not do so; and some
of the witnesses testified that they had followed the slack
from the place of the channel obstruction on up to ap-
pellant's mines. The question of where the slack came
from was one for the jury to solve. It was not incum-
bent on appellee to produce witnesses who could testify
that they saw the slack and followed it as it washed
down the creek and saw it fill up the channel, and cause
the injury to appellee's land. To hold that because of
the difficulty in establishing the extent to which appel-
lant company has participated in causing the injury to
his land, appellee may not recover at all, would be merely
to say that mine operators may take the property of an-
other without compensation. This is not a case of neg-
ligence or no negligence, the evidence being equally con-
sistent with either view. It is a case where the negli-
gence is proven, although the extent of the injury occa-
sioned thereby is not capable of completely definite as-

certainment. But we know of no authority for the contention that because the exact degree in which a negligent act has contributed to a resulting injury is not capable of the most minute ascertainment, the tort feasor may go free.

3. It was one theory of the defense that the obstruction of the creek channel was caused by logs and drifts rather than by slack; and complaint is made of the instructions because this theory of the defense is not covered therein. The instruction offered by defendant covering this idea was not correct, but on another trial, instruction No. 3 as given by the court should be so amended as to present this contention.

4. The instruction on the measure of damages informed the jury that if the injury to the land was only temporary, they should find the difference between the fair and reasonable rental value of the lands in their present condition, and the fair and reasonable value thereof in their "natural condition;" while if they found the injury to be permanent, they should find the difference between the fair and reasonable value of the lands in their present condition and the fair and reasonable value thereof in their "natural condition."

The measure stated is not accurate in the use of the words "in their natural condition." In lieu thereof the court should have used the expression, "immediately before any injury found to have occurred to said land within five years next before August 9, 1913," that being the date of the institution of the action.

There is some proof that the injury is permanent; but for the sake of certainty, the instruction on the measure of damages should be divided, and one instruction given on the measure in case the injury is found to be temporary, and another given on the measure in case the injury is found to be permanent, the jury being instructed to say under which instruction it finds.

5. As to the statute of limitations, we may say that the time did not begin to run until the actual happening of the injury. Day v. Louisville Coal & Coke Company, 60 W. Va., 27, 53 S. E., 776, 10 L. R. A. (N. S.), 167; Crabtree Coal Mining Company v. Hambree's Admr., 90 S. W., 226, 28 R., 687.

For the reasons indicated, the judgment is reversed with directions to proceed in accordance with the views herein expressed. Whole court sitting.