[L. A. No. 4982. In Bank.—August 30, 1917.]

## In the Matter of the Estate of ELIZABETH A. WINETEER, Deceased.

ESTATES OF DECEASED PERSONS—CONTEST OF WILL—EVIDENCE—DEPOSITIONS—RECORD ON APPEAL.—In a proceeding contesting a will on the ground of mental incompetency of a testatrix, objections to an order of the trial court limiting the further reading of depositions of witnesses on the question of the sanity or insanity of the testatrix will not be considered on appeal when the appellant has not embodied in the record by bill of exceptions or otherwise anything to show what the testimony in the excluded depositions was, whether it was material, and, if material, whether it was competent.

ID.—CUMULATIVE EVIDENCE—DISCRETION OF COURT.—The discretionary power of a court to stop cumulative testimony is not only inherent but is expressly recognized by section 2044 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge.

The facts are stated in the opinion of the court.

Wadham & Munkelt, for Appellant.

Patterson Sprigg, and Dwight D. Bell, for Respondent.

HENSHAW, J.—A contest was instituted over the admission to probate of the will of Elizabeth A. Wineteer, deceased. The sole ground of contest pressed at the trial was that the deceased "was not of sound and disposing mind, but was on the contrary of unsound mind and insane and mentally incompetent to make a will." At the trial of this contest evidence, oral and documentary, was introduced, the documentary evidence consisting of depositions, many in number. Of these a large proportion were the views of intimate acquaintances respecting the mental sanity of the deceased, accompanying which views the reasons for the opinions must be given. (Code Civ. Proc., sec. 1870, subd. 10.) A time came in the reading of these depositions when the court of its own motion interposed and set a limit to the further introduction of such testimony. Its ruling in so doing is the prin-

cipal error presented upon this appeal, which follows the findings and determination of the court that the will was the product of an unsound mind.

Herein it becomes of consequence to consider the record. It is as follows: The court declared: "I have frequently limited the number of witnesses who would be permitted to testify upon a given line in any case. That is a well-recognized practice of the courts, . . . which I have followed where the evidence is purely cumulative. We cannot be expected to sit here and hear every witness that can be dragged into court upon a proposition; time does not permit it, nor is it necessary, nor does it conduce to the best results nor to the furtherance of justice. The limit ordinarily is about four or five witnesses upon a point. . . . Now I do not know any reason why I should sit here and hear more than fifteen witnesses on each side upon this proposition of the sanity or insanity of this party by nonexperts and all this kind of cumulative testimony, and I am going to ask you to tell me why I should, and if you do not tell me why, I shall limit the further production of witnesses or depositions on the part of the proponents to three more depositions and the examination of these brothers who are present if they want to. What do you say to this proposition?

"Mr. Munkelt: Had we known we would be limited to a certain number we could have intensified our testimony.

"The Court: I should say if there is anything special about any of the depositions that takes them out of the general rule that they are not substantially cumulative, you may offer them and have them specially ruled on; of course you can offer them and have them ruled on any way. I believe that I am justified that the proper practice would be to limit the production of further evidence on the part of the proponent to three additional depositions along the line of the deposition of the acquaintances—the intimate friend's testimony. You may go over your depositions and produce such of them as you see fit not to exceed three, then you can take your oral testimony.

"Mr. Wadham: If the court please, we understand that the order has been made limiting us to the deposition testimony that has now been introduced and is before the court, but for the purpose of preserving our record we ask permission to offer certain depositions. First we offer the depo-

sition of L. H. Currier, superintendent, particularly as to the opinion on the sanity of Mrs. Wineteer, the decedent; to the same effect the deposition of Mary Belle Gray; to the same effect the deposition of Mrs. Nancy McDonald; to the same effect the deposition of F. McDonald; to the same effect Chris Nielson; to the same effect Mrs. Olive Sherman, Thomas Thompson, Mrs. Ida Devore, Anna Guendel, B. G. Harvey, Sarah Harvey, G. D. Lacey, G. F. Lacey, Mrs. Lottie Lacey, J. M. Miller, and Margaret Miller, and also the deposition of Mary J. Lacey, and we offer to show by her deposition that when Mr. Wineteer came to her place in 1910 and made inquiry for his wife that he did not make any statement to Mrs. Lacey that he had or was about to or had any intention of committing or charging Mrs. Wineteer with insanity.

"The Court: I think you should be permitted to use that portion of Mary J. Lacey's deposition. As to the others, due to the order which the court has made limiting the number of depositions to be used the court will of its own motion decline to hear the depositions, but as to the deposition of Mary J. Lacey, in so far as it tends to contradict statements made by the husband of the decedent you may use it.

"Mr. Wadham: To which ruling of the court the deponent excepts in so far as the proffered offer of testimony is ruled out."

To appellant's contention that the court erred in the foregoing ruling, respondent's preliminary answer is conclusively sound. Herein it is insisted that conceding error, appellant's record fails utterly to establish injury, and that such injury must be shown, and failing to show it the error must be disregarded. (Const., art. VI, sec. 4½; Code Civ. Proc., sec. 475.) It is truly said that appellant has not caused to be embodied in the record by bill of exceptions or otherwise anything to show what the testimony in the excluded depositions was, whether it was material, and, if material, whether it was competent. The soundness of respondent's position in this regard is established beyond question by all the authorities. (*Adams* v. *Weaver,* 117 Cal. 42, [48 Pac. 972]; *Estate of Angle,* 148 Cal. 102, [82 Pac. 668]; 4 Corpus Juris, "Appeal and Error," p. 150.) But in addition to this, conclusive though it is, it is not here shown that in exercising its discretion in controlling the production of evidence—a discretion which is not only inherently within the power of

the court, but which is expressly recognized by our code (Code Civ. Proc., sec. 2044)—this discretion was abused. The code declares that the court "may stop the production of further evidence upon any particular point when the evidence upon it is already so full as to preclude reasonable doubt." The particular point upon which the court curtailed evidence was that of the mental competency or incompetency of the testatrix under the views of "intimate acquaintances." The industry of appellant furnishes us with one opinion from the supreme court of Delaware, holding that the question of soundness or unsoundness of mind under the evidence of such intimate acquaintances is not evidence going to one point. That court bases its determination upon the fact that opportunities for observation of the different witnesses, and consequently their reasons for their determinations, are not identical, and therefore the evidence is not addressed to one particular point, saying: "They get different points of observation, different facts and statements which tend to prove one fact. . . . But here is a condition that grows out of a number of observations and the rule in this case does not apply." (*Pritchard* v. *Henderson,* 3 Penne. (Del.) 128, [50 Atl. 217].) We are not persuaded by this reasoning. The cases to the contrary are well considered and numerous. (*Larson* v. *Eau Claire,* 92 Wis. 86, [65 N. W. 731]; *In re Winslow's Will* (Iowa), 122 N. W. 971; *Covington* v. *Taffee* (Ky.), 68 S. W. 629; *Madisonville* v. *Thomas,* 140 Ky. 143, [130 S. W. 975]; *Montgomery* v. *Morton,* 143 Ky. 793, [137 S. W. 540]; *Eaton* v. *Green River Coal etc. Co.,* 157 Ky. 159, [162 S. W. 807]; *Burhans* v. *Norwood Park,* 138 Ill. 147, [27 N. E. 1088]; *Nelson* v. *Wallace,* 57 Mo. App. 397; *Carpenter* v. *Knapp,* 66 Hun, 632, [21 N. Y. Supp. 297]; *Huett* v. *Clark,* 4 Colo. App. 231, [35 Pac. 671]; *Gray* v. *St. John,* 35 Ill. 222; *Ragsdale* v. *Southern R. R. Co.,* 121 Fed. 924.) Here not only is there a failure to show the materiality or even the admissibility of the matters contained in the depositions, but there is likewise an utter failure to show that this evidence, if admissible, was anything other than cumulative.

The only other proposition which appellant advances is that the decree appealed from must be reversed for the court's failure to make adequate findings. The ground of contest was as above quoted. The court found: "That the testatrix conceived and was possessed of the idea that her husband

and children and each of them had inflicted and were going to inflict upon her great injury and bodily harm, and that they intended to kill her for the purpose of obtaining her property, and that they were conspiring together to obtain her property, and that this mental condition, idea, and belief continued and developed and was present during all of the times, and especially on the date of the execution of the alleged will." The court further found the falsity and utter lack of foundation of this belief and affirmatively found that the husband was "dutiful, kind, considerate, and patient," and that the testatrix had no cause or reason to hold her belief. The same findings are made concerning her children. Still further the court found that at the time of the execution of the will and for some time prior thereto, the testatrix "was possessed of an insane delusion that her said husband and children had done her bodily harm and injury and were about to do her bodily harm and injury, and were going to destroy and kill her for the purpose of getting her property and were conspiring together to obtain her property." And finally, so runs the finding, "It is true that on the twenty-first day of November, 1907 (the date of the execution of the purported will), said Elizabeth A. Wineteer was not of sound and disposing mind and was suffering under and possessed of insane delusions, and was not competent to dispose of her property by will or otherwise." No discussion as to the sufficiency of these findings is called for.

The judgment appealed from is therefore affirmed.

Shaw, J., Sloss, J., Melvin, J., and Victor E. Shaw, J., *pro tem.,* concurred.

Lorigan J., and Angellotti, C. J., concurred on the first ground discussed.