[Civ. No. 12910. First Dist., Div. One. Oct. 23, 1945.]

J. W. EVANS, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Arthur L. Johnson for Petitioner.

Everett A. Corten and Joseph Sheehan for Respondents.

KNIGHT, J.—Petitioner seeks to have annulled a decision of the Industrial Accident Commission denying him compensation for dermatitis. The denial was based on the finding that petitioner did not contract the disease in the course of his employment; and the major point urged by petitioner for the annulment of the decision is that he was denied due process of law by the refusal of the referee to hear the testimony of certain witnesses produced by petitioner on the controlling issue as to whether the disease was contracted in the course of his employment.

The evidence received by the referee consisted of the oral testimony given by petitioner, and four medical reports. Three of the reports were made by petitioner's attending physician and the fourth by two doctors employed by the insurance carrier, who examined petitioner once, at the insurance carrier's request, about five weeks subsequent to the date on which he claimed he contracted the disease.

Petitioner was fifty years of age, and a carpenter by trade; and the following are the facts appearing from his testimony: On October 3, 1944, while engaged in remodeling a building in San Jose, he was directed by his employer to remove the planking which sealed over an old grain elevator shaft, and to clean out the pit. When the shaft was unsealed, gas and vapors arose therefrom, and petitioner descended into the pit. It was about five feet deep and five feet square, and the bottom was covered with about eighteen inches of grain hulls, including rice hulls, and about a quart of dead black widow spiders. Petitioner's sleeves were rolled up to the elbows, his shirt was open at the neck, and he was wearing a hat and glasses; and it took him about half an hour to shovel the debris out of the bottom of the pit. In doing so the dust got into the pores of the skin of his face, neck, hands and forearms. The next day he noticed a smarting sensation on those portions of his face and arms that had been exposed to the dust; and on the second day his arms were swollen. He attempted to secure

an appointment with a skin specialist, but could not do so; and on October 7th he went to see Dr. John M. Hohl. The dermatitis which had developed on the exposed portions of his body became steadily worse, and there were large weeping sores on his arms and face, and the skin came off his arms, hands and face. But the unexposed parts of his body were not affected at all; nor did the skin come off around his eyes where it had been protected by his glasses. On October 12th his doctor sent him to the hospital, where he was treated with penicillin and sulfathiazole. He remained there about ten days. During his illness he lost about twenty pounds, which he later gained back; and at the time of the hearing before the commission on December 13, 1944, he had completely recovered. He also testified that he had no previous history of any dermatitis, and that his general health had always been good.

The first of the three medical reports made by petitioner's attending physician, Dr. Hohl, was dated October 14, 1944. It was entitled "Surgeon's Report." It was therein stated that "while tearing down old grain elevator [petitioner] contracted occupational *dermitites* on hands arms face and neck." His second report was dated December 6, 1944, and was addressed to petitioner's attorney. In that report Dr. Hohl gave the history of the case, a description of petitioner's condition, and the treatment given, and concluded, "It is my opinion that this is a contact dermitites because only exposed parts were affected." His third report was dated December 9, 1944. It was entitled "Surgeon's Final Report." The diagnosis given therein was "Occupational Dermitites."

The report of the insurance company's doctors was dated November 10, 1944. It was addressed to the insurance carrier, and referring to the conversation had with petitioner at the time they made their examination, the report goes on to say: "He states that he had no skin disturbance prior to slightly over one month ago. At that time he noted the gradual appearance of irritability and redness of the skin of his hands, forearms, and face, and to some extent, of his entire body." The examination is reported as follows: "There is a generalized, faint erythroderma, and the skin of his hands, forearms, face, and neck is chronically inflamed with some scarring. There is evidence that the condition has been worse, as the lesions on the face appear to be in a state of partial involution. There is a very dry, craqueled dermatitis of his legs. The superficial lymph nodes are enlarged in all areas

and are particularly noticeable in the epitrochlears. His general health appears to be somewhat below par and there is evidence of some recent weight loss." And the opinion is given as follows:

"Responsibility should not be accepted. His entire condition seems to be based upon a general disturbance, rather than one limited to the skin. The generalized nature of the lesions and the presence of superficial lymphadenophathy is strongly suggestive of a possibility of *lymphoblastoma*. The apparent relatively greater severity of the lesions on the exposed portions of his body is undoubtedly on the basis of an underlying internal disturbance, with aggravation by factors which would not disturb the normal person. Such factors include the routine use of soap and water, exposure to wind and weather, and relative intolerance to topical medication. His story of a possible occupational origin is inadequate to explain the disturbance. There is nothing about exposure to possibly irritating dust to account for a condition of this extent, severity and chronicity. He should be asked to have further investigation, such as hematic studies and lymph node biopsies, by his own physician at his own expense."

On cross-examination petitioner denied positively that there had been at any time any dermatitis on any unexposed part of his body; and he again stated that the dermatitis was limited to the exposed portions of his body—his arms up to the elbows and a V at his neck—and that where his glasses protected his eyes there was no breaking out on his face. Furthermore, he denied unequivocally that he had told the insurance company's doctors, as stated in their report, that he had noticed irritability and redness "to some extent, of his entire body." He also denied that at any time there had been any evidence of dermatitis on his legs. During the cross-examination which brought out these denials, the following took place: "Q. . . . you didn't tell him [the insurance company's doctor] that this condition of irritability and redness of the skin was over your entire body to some extent; you didn't tell him that? A. Why, it was not. Why should I tell him? I don't know. REFEREE: Well, you know whether you did or not. A. No, I didn't tell him it was all over my body, because it was not. REFEREE: Well, he found something. The doctors aren't prone to do those things to any great extent, and Dr. Miller and Dr. Rees have a pretty good reputation in San Francisco for being honest in their examination. Their opin-

ions may not always jibe with what we consider the industrial factors, but at least no one has ever accused them of deliberately lying about the man's history or the man's findings. A. I can't help that at all, because it was not all over my body. REFEREE: All right. If you say you didn't—and I say there is no reason for the doctors lying about it, and I don't believe.they are. Go ahead with your examination.''

At the conclusion of petitioner's testimony his attorney stated: ''I have two more witnesses here''; but the referee refused to allow them to testify, saying: ''The answer is 'No.' If this man hasn't told the truth I am going to be very much disappointed.'' Petitioner's attorney then asked: ''Couldn't I put it on to show the condition around the spectacles, of his eyes. The people from the union here that saw him and his wife——.'' And the referee, interrupting, said: ''No. No, the answer is still 'No.' The matter is submitted.''

On January 9, 1945, the referee recommended that compensation be denied. Petitioner filed a petition for rehearing and offered to produce as witnesses, beside the union representative and petitioner's wife, who were present at the hearing, and whose testimony the referee refused to hear, Dr. Hohl, the attending physician, four nurses from the hospital, his employer and a fellow carpenter,—all of whom petitioner alleged would testify to the definite line of demarcation of the dermatitis between the unexposed and exposed parts of his body. The petition for rehearing was referred to a different referee, and he recommended denial thereof; and on March 2, 1945, the commission made an order to that effect.

 We are of the opinion that, as petitioner contends, the refusal of the referee to hear the testimony of the two witnesses produced by petitioner at the hearing constituted a denial of due process of law and therefore was in excess of jurisdiction. Section 5700 of the Labor Code provides that ''Either party may be present at any hearing, in person, by attorney, or by any other agent, *and may present testimony pertinent under the pleadings.*'' (Italics added.) And the general rule is as stated in 20 American Jurisprudence, at page 1043, that ''A party is entitled to call as many witnesses as he deems necessary to the establishment of his claim or defense, subject to the power of the court reasonably to limit the number who may be heard upon any one issue; . . .''

 Even though the proffered evidence is deemed cumulative, so long as facts testified to by a party are not conclu-

sively established or admitted, they are open to further proof. (53 Am.Jur. 94.)

Here the determination of the question of whether the dermatitis was produced by exposure to an external irritant in the course of the employment or was the result of a constitutional nonindustrial illness depended largely on whether the dermatitis was confined to the exposed areas. Petitioner testified that it was so confined, and his physician based his conclusion that the dermatitis was occupational squarely on the ground that "only exposed parts were affected." The insurance company's doctors based their conclusion that the dermatitis was nonindustrial mainly on the ground that the dermatitis was present on unexposed parts of petitioner's body. Obviously, in view of the sharply conflicting evidence it could not be said that it had been conclusively established or admitted that the dermatitis was not confined to the exposed areas of petitioner's body; and that being so, it is clear that petitioner was entitled as a matter of right to present the testimony of the other witnesses to corroborate his testimony that the dermatitis was not present on the unexposed parts of his body, and that the denial of such right constituted a denial of due process of law,—particularly since under the workmen's compensation law the referee is not the sole judge of the facts. The final decision rests with the commission; and it may, if it sees fit, on the same record make findings of fact contrary to those made by the referee, and decide the case accordingly.

The legal principle here involved is the same as the one presented in *Walker Mining Co.* v. *Industrial Acc. Com.*, 35 Cal.App.2d 257 [95 P.2d 188]. There the Industrial Accident Commission submitted and determined the employer's petition to terminate its liability without permitting it to obtain a medical examination to ascertain the present condition of the claimant and to cross-examine him in that regard; and it was held that such ruling in effect amounted to a denial of the employer's constitutional right to due process. In so holding the court said (pp. 262-263): "We are of the opinion the California Industrial Accident Commission exceeded its jurisdiction in submitting and determining the insurer's petition to terminate its liability without permitting it to obtain a medical examination to ascertain the present physical condition of the claimant, and to cross-examine him in that regard. In effect, that ruling amounted to a denial of the in-

surer's constitutional right to due process by refusing to permit it to cross-examine a witness upon a material issue. In the case of *Saunders* v. *Shaw*, 244 U.S. 317 [37 S.Ct. 638, 61 L.Ed. 1163], it was held that the submission and determination of a case without giving a party thereto the opportunity of presenting his evidence on a material issue resulted in a denial of due process guaranteed by the fourteenth amendment to the federal Constitution. The administration of justice is founded on the principle that every litigant shall have a fair opportunity to present to the court material evidence in support of his valid claim. . . . Clearly the commission is vested with a sound discretion to regulate and control the cross-examination of witnesses in proceedings before that tribunal, and its award will not be disturbed on *certiorari* for mere errors of procedure. But that authority will not justify an arbitrary denial of the right of a litigant to procure competent testimony by deposition or otherwise when the application therefor is seasonably made and pursued with due diligence according to established rules of procedure.''

For the reasons stated the decision is annulled, and the proceeding is remanded, with directions to the commission to proceed with such further hearing as will afford petitioner a reasonable opportunity to present whatever additional evidence may be available to him to support his claim.

Peters, P. J., and Ward, J., concurred.