[Civ. No. 15742.   First Dist., Div. One.   Sept. 10, 1953.]

ARGONAUT INSURANCE EXCHANGE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and FRANK A. THRASHER, Respondents.

Leonard, Hanna & Brophy for Petitioner.

T. Groezinger for Respondents.

BRAY, J.—Petition for writ of review on the ground that due process was denied petitioner at the hearing and in the denial of its petition for reconsideration.

### RECORD

Frank A. Thrasher was employed by Lester P. Cahill as a gardener in Potter Valley and was injured in the course of his employment. Petitioner was Cahill's insurance carrier until midnight, November 12th. Thrasher's application to the commission alleged November 12th as the date of injury. He testified that the correct date was November 10th. The commission found November 11th to be the date. This evidently was an error as there is no evidence whatever concerning that date. The real controversy is whether the accident occurred in Thanksgiving week, which was after the Argonaut's coverage of Cahill had expired. After an award to Thrasher against Argonaut, the latter petitioned for reconsideration. On its denial Argonaut filed its petition for writ of review. Although served in this proceeding, Thrasher has not appeared. The commission filed an answer in which it admits the asserted lack of due process and asks that in the interests of justice the findings, conclusions and award, and the order denying petitioner's petition for reconsideration, be vacated and the matter remanded for further proceedings. Cahill filed an answer denying that petitioner was in anywise denied due process.

### *Was Petitioner Denied Due Process?*

Although Cahill claims that he was covered by the policy expiring November 12, 1951, he gave petitioner no notice of the accident. Thrasher filed his application to the commission about October 2, 1952, almost 10 months after the injury. Petitioner's first knowledge of the injury was on October 3d when it received notice that on October 2d the commission had issued its order joining petitioner as Cahill's insurance carrier and had set a hearing at Ukiah for October 24th. October 17th, petitioner filed its answer stating that it expected to raise issues as to the nature and extent of disability, liability for medical treatment and average earnings at the time of injury. "Should other issues not now known to be proper and necessary later develop, we reserve the right to raise such additional issues in accordance with provisions of law and the rules of your Commission."

There can be little doubt that the referee acted arbitrarily. Thrasher was sworn as a witness. Shortly thereafter the referee stated that Argonaut had not filed an answer. He was then informed that it had been filed October 17th. He stated: ''I don't have it. If you file your answers late, they don't catch up with the file and we don't know what you're doing with the record or the nature of your answer. Let me see a copy of it, please. Besides that, your answer comes in too late. MR. McALEER [counsel for petitioner]: We received rather short notice on this. REFEREE: Your client is the one that has to answer, not you, sir, so you'd better have the mechanics of your client's office checked up so they can comply with the statute.'' Thereupon Attorney Bruner stated that he was appearing for Cahill as ''there is some question of coverage raised by the insurance carrier. REFEREE: There's none raised by the answer. MR. McALEER: We would like to raise that issue at this time, Mr. Referee. REFEREE: You're not going to raise it. Does the employer have a policy here? MR. BRUNER: Yes, your Honor. REFEREE: Let me see the policy. I will take no issue on the matter of coverage, except to show who the insurance carrier was with an outstanding policy on the date of the alleged injury. . . . MR. McALEER: I take it you will not allow me to raise the issue of intoxication? REFEREE: I will not hear that evidence if you didn't raise it in the answer. MR. McALEER: May I make a statement at this time? REFEREE: I will hear no statement at this time. Your client has been sworn, sir. I'm getting a little tired of nurse-maiding the insurance companies along and I'm not going to do it any more in cases where they obviously should know better.'' During the examination of Thrasher his attorney stated: ''. . . there was a question in Mr. Thrasher's mind as to the exact date of the injury. We have listed it as November 12th on the application but since then, he has checked the calendar and——'' Thrasher then gave the date as November 10th. A Mrs. Matlock testified on cross-examination that Mrs. Cahill informed her that the Cahills had no insurance covering Thrasher at the time of the accident. On motion this evidence was stricken. Argonaut's attorney then asked for a short recess. The referee replied: ''I have too many cases to try. I have six cases on the calendar. What do you want a recess for? MR. McALEER: The Cahills were brought here as witnesses and I had no opportunity to investigate their testimony before the hearing.

REFEREE: You mean you want time to investigate your case now? Put your witness on the stand. I will be very glad to hear them. I'm not going to give you any recess." Argonaut then called Simpson, Cahill's stepson, who testified that while he was uncertain about it, he believed that the accident occurred during his Thanksgiving school vacation. A fellow schoolmate was with him at the time Thrasher was injured. Then occurred the following: Question by Mr. McAleer, petitioner's counsel: "And was that friend on the ranch only—— REFEREE: You're leading your witness. Next question. MR. McALEER: That's all I have, Mr. Referee. REFEREE: I don't want to take away any opportunity to examine a witness but you can't lead the witness on vital matters at issue. I want the witness' testimony and not yours." Cahill then testified but could not give the date of the accident. "I'm very poor on dates. . . . I know it was sometime around Thanksgiving but I know it was on a Sunday." Thrasher stated it was on a Saturday. Cahill without objection and under examination by the referee, testified to some length that Thrasher was drunk when he was injured. Then on examination by Cahill's counsel: "What did you observe as to his appearance? A. Only that he was very drunk. MR. BROADDUS [for the applicant]: I will object to that, Mr. Referee. It is a conclusion. REFEREE: Sustained. You haven't raised the issue of intoxication here, anyway. Motion to strike is granted. You can't raise those kind of issues by bringing a man up here and expecting him to defend himself on all types of issues you didn't indicate. The carrier has filed an answer here in which they indicate only a few issues. Now, they want to raise some more and they can't do it. I'm not going to hear issues of this type." Mrs. Cahill testified the accident "was somewhere near Thanksgiving vacation," on a Sunday before Thanksgiving. Attorney McAleer asked: "Mrs. Cahill, who was present on the ranch on the date of the accident? A. There was quite a bunch of us there at the time, my husband and myself and we had some guests. Q. The names of those guests, please? REFEREE: I'm not going into an investigation now. If you think you're going out and get a further investigation of this case, I'm not going to hear of it, either now or on reconsideration. If that's the purpose of this testimony, to go out and make an investigation, I'm not going to allow it. The time and place to make an investigation is before the hearing. Any other purpose that is material to this hearing, I will be very happy to hear the testimony. MR. McALEER: I have no fur-

ther questions. REFEREE: If you want to ask any questions that will materially help the case, I will be very happy to hear it but I'm not going to hear it for the purpose of having you go out and investigate a case.'' At the close of the testimony Attorney McAleer stated: ''I don't like to argue but I would like to make a statement relative to the further issues. REFEREE: [You] may make any statement you wish. MR. McALEER: I would like the record to show the insurance carrier has attempted to raise the issues of coverage and intoxication and that right was denied. REFEREE: It was denied because it wasn't raised in your answer. You expect to come in here and raise issues the man never heard of. In my opinion, that's a poor record of prosecution. What's your position?''

The report of the referee on hearing refers to the desire of the carrier's attorney to raise and produce evidence upon two new issues not previously made,—coverage and intoxication, and the refusal to hear the testimony upon such issue because not raised in the answer. ''It was apparent that the carrier was not prepared to try their case and that no effective investigation had been made, up to at least the time of the answer in question. This case represents the second time in two days when carriers, represented by the same firm of attorneys, appeared for trial and were unprepared to prosecute their defense.'' After discussing certain of the evidence, the report continues: ''At this point the carrier asked for a recess. The remark of the referee was 'No.' It was apparent from the handling of the case that the carrier had not investigated its claim, and with a number of cases on the calendar, I had no intention of taking time out so that the carrier could do what it should have done before.'' The report gives the testimony of Mrs. Matlock to the effect that Mrs. Cahill told her there was no insurance. The only reference in the digest of Simpson's testimony to the time of the accident is a statement that he said the accident occurred on a Sunday. While detailing Mrs. Cahill's testimony, the report states ''that there were a bunch of people at the time. The carrier's attorney asked for the names or identity of these people. The referee advised that he would listen to all material evidence but he had no intention of engaging in an investigation by way of discovery or to use the hearing for purposes of investigation or doing that which should have been done previously.''

In the report of the referee on decision the referee states in effect that in his opinion the answer did not constitute an

answer. He then states : ''It was apparent to this referee, and admitted by the carrier's attorney, that prior to the hearing the case had not been fully investigated by the carrier. It is for this reason that the attorneys sought to orally raise additional issues, without offering formal declaration thereof or an amendment to the answer filed and as contemplated by the sections and rules referred. While I am not averse to allowing amendments in proper cases, I see no reason to do so in this case since the failure to properly prepare the case is due not to [in]advertence but to neglect on the part of the insurance carrier. It failed to properly, or at all, investigate the case. This criticism is not leveled against the attorneys for said carrier for they made every diligent effort to overcome the tremendous handicap under which they were cast by reason of the failure of the carrier to supply them with sufficient facts and an adequate investigation in the first instance. Attorneys are not magicians and the impossible is not to be expected and may not be demanded of them. The high regard in which I hold the attorneys made me reluctant to refuse admission on issues not timely or adequately raised but I cannot condone lack of adequate preparation or investigation on the part of the insurance carrier, particularly where its failure to do so has not been fully, adequately, or at all, explained.''

In its petition for reconsideration petitioner set forth that its first knowledge of the accident came from the notice of hearing set for three weeks later; that in its answer it reserved the right to raise additional issues; that the case was assigned for investigation to independent investigators; that because of the remoteness of the ranch where the accident occurred (Potter Valley) it was impossible to complete the investigation, particularly since Cahill was represented by counsel and petitioner was not free to call on him for investigation; that petitioner had arranged for Cahill, Mrs. Cahill and Simpson to attend the hearing. They were requested to come to the place of the hearing in time for a conference but they did not arrive until after the hearing was in progress and counsel had no opportunity of discussing the case with them. As petitioner's request for recess was denied it was required to put the witnesses on the stand without conferring with them. Thrasher was permitted to allege a date of injury new, different and other than the date alleged in the application with no correlative permission to petitioner to protect its rights. Though the employers knew of the accident when it happened the record shows no report was ever made to petitioner. Petitioner with-

drew any issue as to intoxication. The great weight of the evidence at the hearing showed that the injury was subsequent to November 13th. Petitioner now can definitely establish that the injury did not occur until after November 13th. The trial referee refused to permit petitioner to question Mrs. Cahill as to who was present at the time of injury. Since the hearing, through its investigations, petitioner learned that two disinterested persons were present, one Taylor and one Goodell; that they in company with witness Simpson were students at Palo Alto Senior High School during the fall term; that on either Friday the 16th or Saturday the 17th the three of them went to the Cahill ranch, neither Taylor nor Goodell having been there at any prior time during that month; that they remained there continuously for several days; that while there they were present when Thrasher received his injuries, and they helped extricate him from the fire; that Taylor returned to Palo Alto on November 22d in order to be home for Thanksgiving; that the school records will show that these boys were present during all school days, and that the Thanksgiving holiday was the week commencing November 19th.

In answer to the petition for reconsideration Thrasher alleged that prior to the hearing an investigator assigned by petitioner called at the Cahill ranch and at the hospital where he was confined; that Mr. and Mrs. Cahill and Simpson were at the place of hearing at 8:45 the morning of the hearing, and that petitioner's attorney could have consulted them then; that the testimony of Goodell and Taylor could and should have been produced at the hearing. Thrasher denied that Taylor was present on the ranch at the time of the injury. He claims that although Goodell may have been on the ranch at the time Goodell did not help to extricate Thrasher from the fire, and that the issue of insurance coverage was fully developed at the hearing. Cahill likewise filed an opposition to the petition on the grounds that petitioner had failed to show diligence in discovering the evidence prior to the hearing and that it was only cumulative.

In the referee's report suggesting denial of the petition, the referee states "it should be observed that in connection with the proffered issue of 'coverage' sought to be raised by the carrier, its rights were fully protected by the introduction . . . of the policy"; that the proposed new evidence could have been discovered prior to the hearing. The petitioner is asking for a retrial "as a reward for its patent negligence." "How long must we go on underwriting the

failure of preparation, the neglect of investigation, nursemaiding the carriers and insuring them of a second hearing when their own negligence or self-indulgence, as the case may be, renders them unwilling to properly, or at all, prepare their case in order that they might raise the essential issues and produce the necessary evidence indicated thereby? For my part, I see nothing to be gained by encouraging or condoning the practice involved.'' He then states that petitioner's answer is not an answer either in form or substance. The petition was denied by the commission, two commissioners voting to deny and one to grant.

## DUE PROCESS

The situation here is most unusual. The commission admits that the hearing was arbitrary and petitioner was denied due process. Thrasher, the injured employee, by failing to appear, makes no objection to our so finding. The only objection comes from the employer who at no time, either by himself, his wife or his stepson, has testified that the injury occurred during the period of coverage* and who, if the proffered testimony of Taylor and Goodell be true, will gain an undue advantage by being given insurance coverage under a policy which had expired at the time of the accident. Cahill contends that the action of the referee was jusified because Argonaut was not diligent in preparing for the hearing, that it did not plead the defense of noncoverage and therefore there was no abuse of discretion in its not being able to assert such defense, that the evidence proposed to be offered by petitioner as set forth in the petition for reconsideration could have been discovered had petitioner used diligence.

It is the employer only who claims that Argonaut's right to set up its defense should be denied because of claimed lack of diligence on the latter's part. Yet the facts upon which the claimed lack of diligence is based show that it was the employer's failure to cooperate with his insurer that caused the delay.

Certainly Argonaut was denied the right to crossexamine Mrs. Cahill as to the persons present at the time of the accident. In *Walker Min. Co.* v. *Industrial Acc. Com.*, 35 Cal.App.2d 257 [95 P.2d 188], where the commission

---

*Both Cahills testified that the accident occurred on a Sunday, the stepson that it occurred during the Thanksgiving vacation and on a Sunday, while Thrasher says it occurred on a Saturday.

submitted the proceeding without the insurer having an opportunity to cross-examine the claimant concerning his physical condition, the court said: "In effect, that ruling amounted to a denial of the insurer's constitutional right to due process by refusing to permit it to cross-examine a witness upon a material issue." (P. 262.) (See *Evans* v. *Industrial Acc. Com.*, 71 Cal.App.2d 244 [162 P.2d 488], where the refusal of the referee to hear two additional witnesses for petitioner was held to deny due process, even though their testimony was merely cumulative.) Likewise, the arbitrary attitude and action of the referee towards Argonaut deprived it of its right to due process. At least as between insured and insurer the circumstances required that a short recess be given to enable the insurer to discuss with the insured his testimony and that of the members of his family who had by then assumed an adverse position towards the insurer, and also, that a continuance of the hearing be given to enable the insurer to meet this latter situation.

As to the form of the answer, while it did not plead noncoverage, it did reserve the right to raise additional issues in accordance with law and the rules of the commission. In *O'Hare* v. *Industrial Acc. Com.*, 44 Cal.App.2d 629 [112 P.2d 915], it was held that while the filing of an answer to a claim before the commission "is desirable" (p. 634) it is not mandatory. The court pointed out that under section 18 of the Workmen's Compensation Act (now Lab. Code, § 5506) it is provided: "If the defendant fails to appear or answer, no default shall be taken against him, but the commission shall proceed to the hearing of the matter upon the terms and conditions which it deems proper." Section 5505 of the Labor Code, which provides that a defendant *may* file an answer, states: "Evidence upon matters not pleaded by answer shall be allowed only upon the terms and conditions imposed by the commission, or by the commissioner or referee holding the hearing." Here the referee made no attempt to impose terms, but arbitrarily and finally refused to allow petitioner to set up its defense. While the admission of evidence, the amendment of the pleadings, the conduct of the hearing, and the determination of a petition for reconsideration are matters in the discretion of the commission, and that discretion is very broad (see *Peak* v. *Industrial Acc. Com.*, 82 Cal.App.2d 926 [187 P.2d 905]), nevertheless that fact will not justify an arbitrary denial of the right of a litigant to have a fair opportunity to present

to the commission material evidence in support of a reasonable and substantial defense. Particularly is this so when, by reason of the absence of any objection by the employee to an annulment of the award, the issue as to diligence is raised only by the person who contributed to that lack of diligence, if any there be. As between Cahill and Argonaut we think the record fails to show a lack of diligence on the part of the latter, and that due to the arbitrary action of the referee, petitioner did not have a fair and impartial trial. As said in *J. G. Boswell Co.* v. *Industrial Acc. Com.*, 67 Cal. App.2d 347 [154 P.2d 13], "in certain respects" it has never had its "day in court." (P. 349.)

The findings, conclusions and award, and the petition for reconsideration are annulled and the cause remanded to the commission for further hearing.

Peters, P. J., and Wood (Fred B.), J., concurred.