[L.A. No. 30235. June 30, 1976.]

LILLIAN Y. HORN, Plaintiff and Respondent, v.
GENERAL MOTORS CORPORATION et al.,
Defendants and Appellants.

360

## COUNSEL

Spray, Gould & Bowers, Grace, Neumeyer & Otto, L. Raymond Millard, Richard A. Neumeyer, Ross L. Malone, James P. Melican, Thomas W. Watkins, Haverstock, Gray, Plant, Mooty & Anderson and Richard A. Bowman for Defendants and Appellants.

Joseph Arias, Philip Backer, Clyde C. Beary, Francis Breidenbach, Raphael Cotkin, William C. Falkenhainer, Gary T. Friedman, Daniel Culliton, Richard B. Goethals, Van A. Hagenbaugh, J. William McLafferty, White McGee, Jr., John A. McCaskey, George Maslach, Donald E. Ruppe, William F. Rylaarsdam, Robert Schreiber and James T. Sherron, Jr., as Amici Curiae on behalf of Defendants and Appellants.

Pollock, Pollock & Fay and Robert S. Schlifkin for Plaintiff and Respondent.

Robert E. Cartwright, William H. Lally, Sanford M. Gage, Floyd A. Demanes, Stephen I. Zetterberg and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**THE COURT.**—In this action for damages for personal injuries, defendants General Motors Corporation and Fletcher Chevrolet, Inc., appeal from a judgment entered upon a jury verdict in favor of plaintiff.

About 9 p.m. on the evening of September 23, 1966, plaintiff Lillian Y. Horn was driving her 1965 Chevrolet station wagon down Laurel Canyon Boulevard, a curving Los Angeles street. She was accompanied by her two sons; her six-year-old son was in the front seat and her nine-year-old son in the rear. As she wound downhill, at approximately 25 miles per hour, a car rounding a curve suddenly swung into her lane, its headlights temporarily blinding her. She swerved to her right to avoid the car, bounced off the right curb across the street to the left and into a concrete reinforced abutment.

As she steered to the right, plaintiff brought her left hand across the horn cap in the center of the steering wheel; at the same time, with her right hand, she tried to hold her son on the front seat. She felt and saw something fly between herself and her son; it was later established that this was the horn cap. When the car hit the abutment, plaintiff felt a burning sensation as her face hit the "center part" of the steering wheel. The "center part," following removal of the horn cap, contained three sharp prongs that held the horn cap in place. Plaintiff sustained a laceration of the chin, a displaced fracture of her jaw, a fracture of her left ear canal, and the loss of two teeth.

Plaintiff brought this action against defendant General Motors Corporation, the manufacturer of the station wagon, and defendant Fletcher Chevrolet, Inc., the dealer from whom she purchased it. The case was tried on the single theory of strict liability in tort based on a defective product. In detail plaintiff's theory was that the automobile was defective in that the horn cap was easily removable in normal use of the vehicle thereby exposing three sharp prongs, and that, as a result, when plaintiff was involved in a collision not caused by defendants, she sustained injuries which were measurably aggravated because of this defect in design or manufacture. In short: the defective horn cap caused plaintiff injuries which were greater than the injuries she otherwise would have

received as a result of the collision. The jury returned a verdict against both defendants for damages in the sum of $45,000.

1. ■ *Cause of Action for Aggravation of Injuries Due to Defect*

Defendants contend that they are not liable as a matter of law because a collision is not a normal, proper or intended use of an automobile and therefore the manufacturer is under no duty to design an automobile so as to prevent any aggravation of injuries resulting from a collision which occurs for reasons wholly unconnected with the design and manufacture of the automobile. (*Evans* v. *General Motors Corporation* (7th Cir. 1966) 359 F.2d 822; Hoenig & Werber, *Automobile "Crashworthiness": An Untenable Doctrine* (1971) 20 Clev.St.L.Rev. 578.) In *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 126 [104 Cal.Rptr. 433, 501 P.2d 1153], this court acknowledged the existence of this line of authority but specifically rejected it: "Although a collision may not be the 'normal' or intended use of a motor vehicle, vehicle manufacturers must take accidents into consideration as reasonably foreseeable occurrences involving their products. (*Passwaters* v. *General Motors Corporation* (8th Cir. 1972) 454 F.2d 1270, 1276; *Larsen* v. *General Motors Corporation* (8th Cir. 1968) 391 F.2d 495, 501-503; 80 Harv.L.Rev. 688, 689 (1967); contra, *Evans* v. *General Motors Corporation* (7th Cir. 1966) 359 F.2d 822, 825 . . . .) The design and manufacture of products should not be carried out in an industrial vacuum but with recognition of the realities of their everyday use." In *Cronin* the driver of a bakery truck was injured when another vehicle forced the truck off the road and into a ditch. The impact broke an aluminum hasp holding the bread trays in place and the trays were driven forward against the driver, propelling him through the windshield. We upheld a verdict in favor of the plaintiff and against the manufacturer of the truck declaring that liability rested not on the basis that the hasp caused the collision "but only that its defectiveness was a substantial factor contributing to [the plaintiff's] injuries." (*Id.,* at p. 127.)

In the instant case the jury was properly instructed to the effect that if the station wagon was defectively designed or manufactured in such a manner that the horn assembly caused plaintiff to sustain greater injuries in the collision than she would have otherwise sustained absent the defect, then the manufacturer and distributor of the vehicle would be liable to the extent of such aggravation of her injuries. This instruction contained a principle of liability consistent with our ruling in *Cronin.*

2. *Sufficiency of the Evidence*

Defendants claim that there is insufficient evidence to support the following three factual ingredients allegedly essential to plaintiff's case:

(a) That the design of the horn cap was defective; (b) that plaintiff's jaw in fact came into contact with the center hub area of the steering wheel after displacement of the horn cap and exposure of the underlying prongs; and (c) that plaintiff's injuries were aggravated due to contact with the exposed prongs in the center hub area of the steering wheel. ■ We view the facts in the light most favorable to plaintiff, giving her the benefit of every reasonable inference and resolving all conflicts in her favor in accordance with the standard of review long adhered to by this court. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

(a) ■ Plaintiff's expert testified that the horn cap was defective in that it could be easily knocked off in the course of normal use of the car, thereby exposing the sharp prongs underneath and that there were several alternative ways of designing the horn cap to prevent its being knocked off. Defendants' expert, on cross-examination after testifying that the purpose of the prongs was to keep the horn cap in place, acknowledged that it was foreseeable to the manufacturer that a driver's hand would pass across the horn button while the steering wheel was being turned, that it was foreseeable that the vehicle would be subject to sudden stops and possible impacts, that the horn cap could have been affixed by screws thereby both eliminating the prongs and preventing the cap's displacement, and that the increased cost, if any, of such an alternative would not have been significant. This evidence is clearly supportive of the jury's implied finding that the fastening of the horn cap by three sharp prongs in such a way that it could be easily displaced and the prongs thereby exposed to possible contact by the driver during a collision or sudden stop, constituted a defect in design or manufacture. Defendants' contention that this evidence is insufficient because it fails to establish that this design varies from the state-of-the-art as reflected in the design of other cars in the same year is without merit. We specifically rejected the necessity for such proof in establishing a defect in *Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 125-126 (see *Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 383 [93 Cal.Rptr. 769, 482 P.2d 681]).

(b) ■ Although plaintiff did not directly state that the horn cap came off and that her face hit the exposed prongs, there was clearly substantial evidence which would support a finding by the jury to that effect. Plaintiff recalled her hand crossing over the center of the steering wheel; indeed during an experiment at trial the same hand movement resulted in the horn cap being knocked off. She felt and saw something

fly between herself and her son after she brought her left hand across the steering wheel in swerving to the right in order to avoid the oncoming car. After the accident, she saw that the horn cap was detached. She distinctly recalled that her face had collided with the center part of the steering wheel and that she then experienced a burning sensation. There were no other sharp surfaces in the center of the steering wheel, and the injury pattern on plaintiff's face matched the pattern of the exposed prongs.

(c) ■ Defendants pointed out that plaintiff failed to present any evidence as to the type and severity of injuries she would have received if the horn cap had been in place, whereas defendants presented uncontradicted evidence to the effect that the force of the collision was such that plaintiff would have broken her jaw even if the horn cap had been in place. Therefore they argue that there is insufficient evidence to establish that the exposed prongs caused any injuries at all. To put the argument another way, since plaintiff's jaw would have been broken by the collision in any event, the defect in the horn assembly actually caused no injury. Plaintiff's expert testified that the force with which she struck the prongs was 100 times greater than the force with which she would have struck the surface of the horn cap when in place. The expert also testified that it was possible to construct a well secured horn cap of material which would collapse upon impact. In addition the jury had an opportunity to observe the hub area of the wheel with the horn cap off and the prongs exposed, and could reasonably infer from such observation that more damage would be done to a face striking the prongs instead of the horn cap itself.

We therefore conclude that the jury was warranted in finding, on substantial evidence, that the exposed prongs caused plaintiff to suffer greater injuries as a result of the collision than she would have received if the horn cap remained in place. In doing so the jurors were entirely free to reject defendants' evidence to the contrary.[1] (*Foreman & Clark Corp.*

---

[1] Defendants' failure to recognize that the jury was free to entirely disregard defendants' evidence undercuts an additional argument raised in the briefs, to wit that defendants were relieved of liability because plaintiff sustained her injuries in an unusual, unexpected and bizarre manner. The supposed bizarreness of the accident depends solely upon the belief of defendants' evidence that the unrestrained body of a driver in a similar collision would move forward upon impact and the driver's chin would contact the upper rim of the wheel instead of the center part. Defendants' argument, therefore, is that if plaintiff's chin did contact the center part of the wheel, it defied normal physical laws and was thus so bizarre as to defeat liability. If, however, the jury disregarded defendants' evidence of the normal trajectories of unrestrained bodies

v. *Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362]; *Hicks* v. *Reis* (1943) 21 Cal.2d 654, 659-660 [134 P.2d 788].) Having found that plaintiff suffered aggravated injuries, the jury was under a duty to fix the amount of damages from the evidence available. ■ "It is the rule that one whose wrongful conduct has rendered the determination of damages uncertain cannot thereby escape liability . . . ." (*Hutcherson* v. *Alexander* (1968) 264 Cal.App.2d 126, 135 [70 Cal.Rptr. 366, 38 A.L.R.3d 636]; 4 Witkin, Summary of Cal. Law (8th ed.) § 846, p. 3140.) Defendants do not contend that the amount of damages was excessive.

3. ■ *Exclusion of Evidence Pertaining to Plaintiff's Failure to Use Seat Belts*

Plaintiff's station wagon was equipped with seat belts admittedly in good working order. She admitted that she was not using them at the time of the collision. At a hearing outside the jury's presence, defendants offered to prove by the testimony of an expert that failure to use seat belts was a misuse of the automobile and that if plaintiff had been using the seat belts at the time of the accident, her injuries would have been substantially reduced. The trial court ruled such evidence inadmissible on the ground that plaintiff's contributory negligence was not an issue. ■ Defendants concede, as indeed they must, that ordinary contributory negligence is not a defense to an action for damages based on strict liability in tort (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163]); they urge, however, that since, as we pointed out in *Luque,* the form of contributory negligence known as assumption of risk is a defense to such an action the offered evidence was admissible on that ground. They argue that plaintiff consciously chose not to use her seat belt with the knowledge that such conduct would increase the risk of injury in the event of a collision, since she would probably be thrown about the interior of the car. In sum, defendants argue, plaintiff voluntarily and unreasonably proceeded to encounter a known danger.

In *Luque* we said: " 'The only form of plaintiff's negligence that is a defense to strict liability is that which consists in *voluntarily and unreasonably proceeding to encounter a known danger,* more commonly referred to as assumption of risk. For such a defense to arise, the user or

in collisions, as it was free to do, there is nothing bizarre about the injury at all—the car struck an abutment, throwing plaintiff forward so that her chin hit the center area of the wheel.

consumer must become aware of the defect and danger and still proceed unreasonably to make use of the product.' (Italics added.) (*Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 243 . . . .)" (*Luque* v. *McLean, supra,* 8 Cal.3d at p. 145.) ▮ There is no evidence in the present record showing, or from which it can be reasonably inferred, that plaintiff was aware of the defect in this case, namely the easily removable horn cap exposing sharp prongs, or that she was aware of any danger caused by such defect. The evidence offered by defendants as to plaintiff's failure to use her seat belt did not purport to show that plaintiff knew that the horn cap was defective and that her failure to use her seat belt would expose her to the risk of injury from the prongs beneath the horn cap in the event the cap itself came off. The offered evidence did not establish the defense of assumption of the risk, but at best indicated some negligence of a general nature on plaintiff's part in not using the seat belt. We conclude that the trial court properly excluded the evidence in question.[2]

Defendants urge that this evidence was also admissible on the ground that it would tend to show that plaintiff's failure to use a seat belt was the proximate cause of her injuries. However, this argument amounts to nothing more than a restatement of the inadmissible defense that plaintiff's negligence in not using a seat belt contributed to or was a contributing cause of the accident. Defendants' cognate claim that the proffered evidence was relevant to prove that some of plaintiff's damages could have been avoided by reasonable action on her part is again merely another word formulation of the same inadmissible claim of contributory negligence.

▮ Defendants' final claim as to the admissibility of this evidence is to the effect that it would tend to prove that the product—the station wagon—was misused. It is true as indicated earlier in this opinion that if the product is put to a use by the consumer that is not reasonably foreseeable, then strict liability should not be imposed. (*Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 126; *Johnson* v. *Standard Brands Paint*

---

[2]In the case at bench, judgment on the verdict in favor of plaintiff and against defendant was entered on December 15, 1971, well in advance of this court's decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226] (filed Mar. 31, 1975). In *Li* this court held that the rule of comparative negligence therein announced would be applicable only to cases "in which trial has not begun before the date this decision becomes final in this court [Apr. 30, 1975] . . . ." (13 Cal.3d at p. 829.) Under these circumstances we find no compelling reason to apply the rule of comparative negligence to this case which was tried long before our decision in *Li* and in which on this appeal the issue of comparative negligence was neither briefed nor argued.

*Co.* (1969) 274 Cal.App.2d 331, 340 [79 Cal.Rptr. 194]; Prosser, Law of Torts (4th ed. 1971) pp. 668-669.) The simple answer to defendants' argument is that the driving of an automobile without using a seat belt is an entirely foreseeable use of the vehicle.

### 4. *Exclusion of Cumulative Evidence*

The trial court is vested with discretion to limit the number of expert witnesses. (Evid. Code, § 723; Witkin, Cal. Evidence (2d ed. 1966) § 1096, p. 1014.) Defendants called four experts who gave their opinions as to the movements plaintiff's body must have taken upon impact and uniformly concluded that she could not have struck the center area of the wheel. The trial court refused to allow defendants to introduce the same expert opinion evidence by a fifth expert, an employee of defendant General Motors. It is clear that this testimony was cumulative on the point.

 The trial court has discretion to refuse to admit cumulative evidence. (Evid. Code, § 352; *Estate of Wineteer* (1917) 176 Cal. 28, 30-31 [167 P. 516].) Moreover, "the exclusion of evidence which has only a cumulative effect will not justify reversal on appeal. . . ." (*Weller* v. *Chavarria* (1965) 233 Cal.App.2d 234, 247; *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 357 [19 Cal.Rptr. 473, 369 P.2d 1]; *Pauly* v. *King* (1955) 44 Cal.2d 649, 661 [284 P.2d 487].) Defendants have not shown that the fifth expert's opinion would be anything other than cumulative. Their reliance on *Evans* v. *Industrial Acc. Com.* (1945) 71 Cal.App.2d 244 [162 P.2d 488], is of no avail since there the court merely determined that there was insufficient evidence on the point in issue to justify exclusion of the evidence as cumulative; in other words, in *Evans* the referee abused his discretion by not allowing any witnesses to corroborate the testimony of the party seeking workmen's compensation. In the case at bench the evidence was truly cumulative and thus properly excluded.

 Defendants introduced into evidence several motion pictures made by General Motors of the body movements of an unrestrained occupant of a car upon collision. When they sought to introduce on this point an additional motion picture made by an independent expert, the court excluded it as cumulative. However, the court did allow the expert who made the picture to testify as to the experiments which constituted its subject matter. Defendants have failed to show that the additional picture was not cumulative. Even if it were not cumulative, we do not see

how defendants could have been prejudiced by the exclusion of the motion picture, since the court permitted the person who made the picture to testify as to its content.

The judgment is affirmed.

Richardson, J., who was not a member of this court when the case was orally argued, did not participate.

**CLARK, J.**—I dissent.

The trial court erred in excluding the seat belt evidence. That evidence was offered to show plaintiff's injuries in part were caused by her failure to use the safety device provided by the manufacturer. In accordance with the equitable principles recently announced in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], the evidence is admissible because it is relevant to the issue of damage.

The By The Court opinion concludes the evidence is inadmissible because contributory negligence is not a defense. True, *Li* holds contributory negligence no longer exists in California in negligence cases. However, *Li* also holds that an injured plaintiff's recovery shall be reduced in proportion to his fault. The majority offers no reason for its failure to apply the *Li* principle in this product liability case. The issue was unquestionably raised by the defendant's offer of proof. Why should *Li* not apply across the board?

Prior to the *Li* decision, a plaintiff's contributory negligence barred all recovery for loss incurred by reason of a defendant's negligence except where defendant had the last clear chance, in which case plaintiff could recover all loss. Repudiating the " 'all-or-nothing' " rule of contributory negligence, this court reasoned: "the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault.[3] . . . The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness." (13 Cal.3d 804, 810-811.)

---

[3] Dean Prosser states the kernel of critical comment in these terms: 'It [the rule] places upon one party the entire burden of a loss for which two are, by hypothesis, responsible.' (Prosser, Torts (4th ed. 1971) § 67, p. 433.) Harper and James express the same basic idea: '[T]here is no justification—in either policy or doctrine—for the rule of *contributory negligence, except for the feeling that if one man is to be held liable*

Finding no justification for continuing the rule of contributory negligence, concluding the rule was not truly statutory,[1] and rejecting the practical difficulties in applying comparative fault, this court determined "that the time for a revision of the means for dealing with contributory fault in this state is long past due and that it lies within the province of this court to initiate the needed change. . . ." (13 Cal.3d 804, 826.) Thus, " 'pure' " comparative negligence was adopted—distributing "liability in direct proportion to fault in all cases." The last clear chance doctrine and assumption of risk defense—to the extent it is a variant of contributory negligence—were abolished. (13 Cal.3d at pp. 827-829.)

The equitable principles of comparative fault must now be applied in strict liability cases. (*Dippel* v. *Sciano* (1967) 37 Wis.2d 443 [155 N.W.2d 55, 64-65]; *Edwards* v. *Sears, Roebuck and Company* (5th Cir. 1975 [Miss.]) 512 F.2d 276, 290; *Hagenbach* v. *Snap-on Tools Corp.* (1972 [N.H.]) 339 F.Supp. 676, 680-683.)[2]

The strict liability doctrine was established in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]: "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."

Strict or product liability is a fault doctrine—not an absolute or no-fault doctrine. (Lascher, *Strict Liability in Tort for Defective Products: The Road to and Past Vandermark* (1965) 38 So.Cal.L.Rev. 30, 37.) While the injured plaintiff is not required to prove the manufacturer is *negligent,* he must prove the manufacturer is at *fault.* (Comment, *Tort Defenses to Strict Products Liability* (1969) 20 Syracuse L.Rev. 924, 925-928.) Thus, the plaintiff must show that the product was in some way

because of his fault, then the fault of him who seeks to enforce that liability should also be considered. But this notion does not require the all-or-nothing rule, which would exonerate a very negligent defendant for even the slight fault of his victim. The logical corollary of the fault principle would be a rule of comparative or proportional negligence, not the present rule.' (2 Harper & James, The Law of Torts (1956) § 22.3, p. 1207.)"

[1]The dissent in *Li* disputed only the conclusion that the contributory negligence rule was not a statutory one.

[2]The Supreme Court of Oklahoma stated comparative principles were inapplicable to strict liability cases because the statute providing for comparative fault was expressly limited to negligence cases. (*Kirkland* v. *General Motors Corporation* (1974) 521 P.2d 1353, 1367.)

defective (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722]); he must show that the manufacturer produced a product in a condition justifying liability for the ensuing injury. The mere introduction of a product into the stream of commerce is not enough to impose liability for subsequent damage. The manufacturer is not an insurer. (*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, ·133 [104 Cal.Rptr. 433, 501 P.2d 1153].) Thus, the auto manufacturer is not liable for every occurrence involving its cars, but only for the relatively few accidents attributable to defects.

This court's pioneering effort in product liability was never intended to abolish considerations of fault; rather, it "was to relieve the plaintiff from problems of proof inherent in pursuing negligence [citation] and warranty [citation] . . . ." (*Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 133.)

While "defect" has not been defined precisely by our courts, each attempt to do so reflects the fault concept. The Restatement Second of Torts describes a defective condition as one "unreasonably dangerous to the user or consumer or to his property." (§ 402 A.) Rejecting the Restatement test, this court recently described the unreasonably dangerous requirement as "an element which rings of negligence." (*Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 132.) While recognizing that there was then no all encompassing definition, the court stated that a defective product is one failing to equal the quality of most like products, the deviation from the norm causing injury. A similar approach is reflected by Prosser, Torts (4th ed. 1971) pages 659-660: "The prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety. It has been said that this amounts to saying that if the seller knew of the condition he would be negligent in marketing the product."

Resort to the warranty concept—the historical basis for product liability—again shows the doctrine to be founded in fault. Breach of express representation or failure to comply with legally imposed obligations of merchantability or fitness obviously reflect fault. Similar considerations led the Wisconsin Supreme Court to conclude, in holding comparative fault principles applicable to strict liability cases, that strict liability is equivalent to negligence per se. (*Dippel* v. *Sciano, supra,* 155 N.W.2d 55, 65.)[3]

---

[3]The court reasoned that a defective product, like a violation of a safety statute, can create an unreasonable risk of harm, and the minimum standard of care, production of

Like the contributory negligence doctrine repudiated in *Li,* existing law governing plaintiff negligence in strict liability cases is an "all-or-nothing" rule. The plaintiff's ordinary negligence does not bar his recovery, but his voluntary and unreasonable· encountering of known danger does. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 672 [117 Cal.Rptr. 1, 527 P.2d 353]; *Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163].) Dean Prosser's "kernel" of comment, critical of the former contributory rule in negligence cases, is applicable to the existing rule in strict liability cases. "It places upon one party the entire burden of a loss for which two are, by hypothesis, responsible." (Prosser on Torts, *supra,* § 67, p. 433.)

Other considerations leading to the rejection of contributory negligence and acceptance of comparative negligence in *Li* are applicable to strict liability cases.

The harshness of the contributory negligence rule was traditionally dramatized by pointing to the case where the plaintiff's deviation from the community standard was slight and the defendant's extreme. (See e.g., Prosser, Torts (4th ed. 1971) § 67, p. 433.) The harshness often led juries to compromise in contributory negligence cases. (*Id.*; *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at p. 811.) In *Li* the court pointed out the process is haphazard and detracts from public confidence in the ability of the law and legal institutions to assign liability on a just and consistent basis. (13 Cal.3d at·pp. 811-812.) When in a products liability case the plaintiff's conduct is extreme and the defendant's deviation from the community expectation slight, it is equally harsh to require the defendant to bear the entire loss, and we can expect that a failure to adopt equitable principles in the product liability case will produce a similar loss of public confidence in the law.[4]

---

nondefective products, like compliance with the safety statute, is established by law. (155 N.W.2d at pp. 64-65.)

[4]One method of limiting the loss of confidence due to the refusal to apply equitable principles is to expand the assumption of risk and misuse defenses thereby barring all recovery. An illustration of such expansion appears in the only case refusing to apply comparative principles in a strict liability case. Confronted by a plaintiff guilty of drunk driving and a statute not permitting resort to comparative principles, the court concluded that drunk driving constituted a misuse of the vehicle. (*Kirkland* v. *General Motors Corporation, supra,* ·521 P.2d 1353, 1367.) (The court did not discuss whether drunk driving was a foreseeable use of the vehicle. (Cf. Majority opn., pp. 370-371.)) Denial of all recovery when both parties are at fault, however, is contrary to the equitable principles of *Li.*

Prior to *Li*, negligent plaintiffs ordinarily fared better seeking recovery in strict liability than in negligence, but this furnishes no basis for rejecting the equitable principle of comparative fault. The difference in treatment accorded negligent plaintiffs was due to the rule that ordinary negligence was not a defense in strict liability cases. Although some authorities have attempted to justify that rule by analogy to principles governing absolute liability for abnormally dangerous activity (e.g., Rest.2d Torts, § 402 A, com. n), strict liability is not absolute liability since the design, manufacture and distribution of chattels are not abnormally dangerous activities. The analogy therefore fails.

The best explanation, as Professor Schwartz appropriately notes, for disallowing contributory negligence to bar product liability "focuses on the modern distrust of the defense as a complete bar to an injured plaintiff's claim." (Schwartz, Comparative Negligence (1974) § 12.6, pp. 204-205; Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk* (1972) 25 Vand.L.Rev. 93, 117-119.) Dislike of the "all-or-nothing" rule must lead not to a substitute "all-or-nothing" rule, but rather, as *Li* teaches, to the equitable principle of comparative fault.

Therefore, strict liability for a defective product being a fault doctrine, the "irresistible" reasoning of *Li* must again control. As in *Li,* the "all-or-nothing" concept fails justice because "in a system in which liability is based on fault, the extent of fault should govern the extent of liability." (13 Cal.3d at p. 811.)

In addition, comparative. fault principles allow balancing manufacturer-seller responsibility with plaintiff misconduct, commensurate with the dual policy underlying product liability: (1) protecting those who are powerless to protect themselves from harm caused by a defective product (*Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245, 251; *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 63); and (2) spreading loss among those best able to bear it (*Luque* v. *McLean, supra,* 8 Cal.3d 136, 145; *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 462 [150 P.2d 436] (Traynor, J., concurring)).

Protection is not impaired by weighing plaintiff's fault in determining the amount of recovery. The plaintiff is at fault only if he fails to act as a reasonable person in similar circumstances, thereby aggravating the harm to himself. If so, his recovery should be diminished proportionate-

ly. On the other hand, if powerless to protect himself, he simply is not at fault and his damage is undiminished.

The concept of comparative fault is also consistent with the second policy—loss allocation. While it is equitable that society at large—through the manufacturer—bear the cost of compensating injury due to a defective product, society should not be forced to bear that part of the loss attributable to the injured's own misconduct. (Schwartz, Comparative Negligence, *supra,* pp. 204, 206-207; see Levine, *Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty* (1968) 52 Minn.L.Rev. 627, 652-663; Epstein, *Products Liability: Defenses Based on Plaintiff's Conduct* (1968) Utah L.Rev. 267, 284.)

Application of comparative fault principles to the strict liability case provides uniformity in the law, simplifying trials. A plaintiff claiming injury from a product may seek recovery either in strict liability or in negligence (*Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 470-475 [85 Cal.Rptr. 629, 467 P.2d 229]), and this court has recognized that such plaintiff may benefit by resort to negligence principles in a product liability case (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 384 [93. Cal.Rptr. 769, 482 P.2d 681]). While comparative fault rules are still in infancy, it is already apparent grave confusion exists if comparative principles are applied exclusively to negligence actions. Again, in the negligence cause, plaintiff's own negligence reduces but does not bar his recovery. (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 824-825.) In the strict liability cause, plaintiff's own negligence is now either disregarded or it bars the cause entirely, depending on whether he voluntarily and unreasonably encountered a known danger. (*Luque* v. *McLean, supra,* 8 Cal.3d 136, 145.) Unequal treatment of plaintiff negligence must lead to court and jury confusion. We may anticipate that, in the event comparative principles are not extended to include strict liability actions, confusion will compound in this expanding field.

Apportioning fault in a strict liability case will present a jury problem. But again, *Li* held that the difficulties inherent in assigning percentages of fault are not insurmountable. (13 Cal.3d at pp. 823-824.) It has been pointed out that apportionment in the strict liability case is no different from apportionment in the negligence per se case. In the latter, the law also fixes the standard of conduct, and comparative negligence jurisdictions have been assigning percentages in negligence per se cases for years. (*Dippel* v. *Sciano, supra,* 155 N.W.2d 55, 64-65.)

Plaintiff's own fault being a proper issue in the case, the trial court erred in excluding the seat belt evidence. (See *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976, 982 [80 Cal.Rptr. 373].)[5]

[5]Contrary to the claim in the By The Court opinion (fn. 2) the issue of comparative fault was presented to this court and is properly before us. Counsel filed briefs in this case prior to *Li* and, of course, did not mention that case. Counsel also did not undertake the heroic task of urging that we repudiate the contributory negligence doctrine in negligence cases. It obviously would be unrealistic to expect him to have done so, this being a strict liability case. Nor did counsel directly attack the general rule that contributory negligence is not a defense in strict liability cases. Rather, counsel throughout has urged that special rules should apply where, as here, the defect in the automobile does not cause the accident but merely aggravates the injury. One of the special rules urged for the aggravation case is that plaintiff's failure to take reasonable precautions against aggravated injuries (wear a seat belt) should reduce damages, thus raising the comparative principle.

Adopting comparative negligence, *Li* holds that, rather than barring all recovery, plaintiff fault will serve to reduce damage in a negligence case. The objections and contentions made—not the authority cited—should determine what issues are properly before this court. This being strict liability, not negligence, a party attempting to raise the *Li* principle would be technically and practically incorrect in urging comparative negligence. Instead, the contention would have to be phrased in different terminology, and the use of the term "reduction of damages"—the ultimate effect of application of the *Li* principle—is appropriate. Thus, the comparative principle has been urged throughout the trial and appeal.

Failure to cite *Li* or other comparative negligence authority is not determinative when counsel has urged adoption of the correct theory or rule of law. The objections and contentions made—not authorities cited—must determine what issues are properly before this court. To hold that failure to cite our favorite authorities or to use special jargon precludes consideration of a contention made constitutes judicial arrogance. In sum, defendants, by urging throughout these proceedings that the seat belt evidence is admissible to reduce damages, have properly raised the comparative issue.

If there be any doubt as to the presence of the comparative fault issue in this case, it was eliminated when the Court of Appeal reversed the trial court's decision on the ground that the jury should have been permitted to determine "as a question of fact that the use of the seat belts would have reduced plaintiff's damages." (*Horn* v. *General Motors Corp.* (Cal.App.) 110 Cal.Rptr. 410, 416.)

The By The Court opinion also seeks to avoid the comparative principle on the ground that the judgment was entered prior to the *Li* decision and *Li* held comparative negligence is applicable only to cases where trial commenced subsequent to that decision. (*Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d 804, 829.) The issue in the instant case is not whether to apply "comparative negligence"; again, this is a strict liability case. The issue here is whether comparative fault should be applied in strict liability cases.

The very reasons relied upon in *Li* for adopting limited retroactivity require that defendants here be permitted the benefit of the comparative fault principle. *Li* pointed out that a determination that retroactivity be limited turns upon "considerations of fairness and public policy." It was concluded: "Upon mature reflection, in view of the very substantial number of cases involving the matter here at issue which are now pending in the trial and appellate courts of this state, and with particular attention to considerations of reliance applicable to individual cases according to the stage of litigation which they have reached, we have concluded that a rule of limited retroactivity should obtain here." (13 Cal.3d at p. 829.) By adopting the cutoff date based on relationship of the *Li* decision to the trial date, it is apparent that *Li* sought to protect the

The judgment should be reversed and the cause remanded for retrial on the issue of damage.

McComb, J., concurred.

Appellants' petition for a rehearing was denied August 4, 1976.

---

interests of litigants who had tried their cases under the old law and to mitigate the great burden upon our trial and appellate courts resulting if *Li* were applied to all pending cases.

Application of the *Li* cutoff date will defeat both purposes. Strict liability being a major source of litigation, numerous cases subsequent to *Li* involving the applicability of comparative fault are in existence. Whether or not this court ultimately concludes that comparative fault is applicable to strict liability, we will be required, by applying the *Li* cutoff date, to reverse the decisions of those judges who subsequent to *Li* anticipated a contrary result. Considerations of fairness and public policy reflected by *Li* require this court to determine the issue as expeditiously as feasible, and to apply as a cutoff date, not the *Li* date, but the date of the new decision.